## In re JUDICIAL DITCH NO. 24 IN FREEBORN AND MOWER COUNTIES.

### Nos. 534, 535.

United States District Court
D. Minnesota, Second Division.
Nov. 9, 1949.

John F. D. Meighen, and Meighen, Knudson, Sturtz & Peterson, Albert Lea, Minnesota, for petitioners.

Philip Stringer, and O'Brien, Horn, Stringer, Seymour & O'Connor, St. Paul, Minnesota, for Chicago, R. I. & P. R. Co.

A. C. Erdall, C. O. Newcomb, and S. W. Rider, Jr., Minneapolis, Minnesota, for Chicago, M., St. P. & P. R. Co.

200

DONOVAN, District Judge.

In 1948, owners of certain property in Freeborn and Mower Counties, Minnesota, petitioned the State District Court of the Tenth Judicial District for construction of a judicial ditch in their respective counties. The petition was filed pursuant to 9 M.S.A., §§ 106.011 to 106.661, as amended by Chapter 143, Minnesota Laws, 1947. Thereafter engineers and viewers were appointed, the preliminary hearing was held, and other required procedures were carried out. On August 30, 1948, after holding the final statutory hearing, the court entered an order confirming the viewers' determination of the amount of benefits which each of the affected tracts of land would receive from the proposed ditch, and declaring what benefits and damages were chargeable to each tract involved.

The Chicago, Milwaukee, St. Paul & Pacific Railroad Company, and the Chicago, Rock Island & Pacific Railroad Company (hereinafter individually referred to as the "Milwaukee" or the "Rock Island", and collectively as the "railroads"), aggrieved by the amount of benefits assessed against them, appealed the determination of benefits as to their properties to the appropriate state court, pursuant to 9 M.S.A., § 106.631. Thereafter, both the Milwaukee and the Rock Island removed the matter to this court upon the theory of diversity of citizenship and the claim that the amount in controversy exceeded $3,000. Both railroads are foreign corporations.

The petitioners who commenced the proceedings by filing a petition for the ditch in state court now move this court to remand the case. They claim that the ditch proceedings are administrative, not judicial; that the jurisdictional amount required for federal court jurisdiction is lacking; that the required diversity does not exist, and that proper notice of removal was not given.

The state statutes upon which the ditch proceedings are based are important. Two types of ditches, county and judicial, are dealt with by said statutes. A county ditch is confined to one county. A judicial ditch extends into more than one county. Proceedings, however, for either type of ditch, are commenced by the same method. Landowners who reside in Minnesota and own 51% of the land affected by the proposed ditch, or who comprise a majority of the landowners whose property is affected by the proposed ditch, file a petition for the construction of the ditch. A petition for a county ditch is addressed to the county board of the county in which the ditch is located. A petition for a judicial ditch is addressed to the district court of that judicial district. 9 M.S.A. §§ 106.021, 106.031. Until the time of appeal, the duties and procedure of the district court and the county board are similar, if not the same, in the ditch proceedings over which they have jurisdiction. After the petition is filed, the petitioners must file a bond conditioned upon payment of the expenses, should the proceedings be dismissed or the contract for the ditch not awarded. 9 M.S.A. §§ 106.041, 106.051, 106.061. The court or board then appoints an engineer to make a preliminary survey of various matters. 9 M.S.A. §§ 106.071, 106.081. Upon submission of the engineer's preliminary report, the court or board notifies the landowners and corporations likely to be affected by the proposed improvement of the preliminary hearing which the court or board will hold. Interested parties may appear and be heard. If the court or board finds that the petition is insufficient in law or that the proposed improvement is not feasible, not of public benefit or utility, or that the outlet is not adequate, the petition must be dismissed, but contrary findings require approval and further proceedings. However, "all questions relative to the practicability and necessity of the proposed drain or improvement shall be subject to further investigation and consideration at the final hearing." 9 M.S.A. § 106.101.

If the findings of the board or court do not require a dismissal, the engineer is required to make a detailed survey and specifications for the proposed improvement. 9 M.S.A. § 106.111. Viewers are then appointed to determine the amount of benefits and damages resulting to the lands affected by the improvement. 9 M.S.A. § 106.141. When the reports of the viewers and engineer are filed, the court or board then

notifies the interested parties of the final hearing. 9 M.S.A. § 106.171. At the final hearing, as at the preliminary hearing, the court or board can modify the reports, or, it can order further inquiry and adopt the reports as modified at the adjourned hearing. If the reports establish the statutory requirements for a ditch, the court or board can establish the ditch by its order and find the amount of benefits or damages against each tract affected. The court or board can refuse to establish the ditch if the reports justify such a refusal. 9 M.S.A. § 106.191.

The proceedings to this point obviously are administrative, for the reason that the facts are being gathered under the direction of the court or board. The process is one of investigation and determination to decide what should be done with respect to the future. The objective is to change existing conditions. Such a proceeding is not judicial. Commissioners of Road Imp. District No. 2 of Lafayette County, Ark., v. St. Louis Southwestern Ry. Co., 257 U.S. 547, 554, 42 S.Ct. 250, 66 L.Ed. 364. The state court, therefore, when it held the final hearing for the judicial ditch, established the ditch by its subsequent order, and confirmed the report of the viewers with respect to the railroads' and other lands, was not acting in a judicial capacity. It was acting in an administrative or legislative capacity.

The railroads contend, however, that the proceedings became judicial when they appealed their assessment to the district court. That is, they contend that the appeal was to the district court as a court, not in an administrative capacity. The statute provides for this appeal immediately after the final order by the court or board. 9 M.S.A. § 106.631. The trial is de novo. The railroads' contention is supported by Commissioners of Road Imp. District No. 2 of Lafayette County, Ark., v. St. Louis Southwestern Ry. Co., supra, and In re Chicago, Milwaukee, St. Paul & Pacific R. Co., D.C.Minn. 1931, 50 F.2d 430. In the Road District case an assessment was made against property for construction of a road. The Supreme Court, with Chief Justice Taft writing the unanimous opinion, held that the special assessment proceeding in the court there was a judicial proceeding. The court recognized that such a proceeding, originally administrative, could become judicial. This is pointed out by the Chief Justice at pages 554 and 555 of the opinion in 257 U.S., at page 253 of 42 S.Ct.:

"The inquiry before the county court is a proceeding to declare and enforce a liability of lands and their owners as it stands on present and past facts under a law and rules already made by the Legislature and the administrative officers.

"The determination of benefits in such cases is quite like the valuation of property under condemnation proceedings. 'The true inquiry is; What will the effect of the proposed improvement be upon the market value of the real property including the buildings thereon? * * *' * * * Assessments for benefits and damages are different in their essential characteristics from those for general taxation. * * * Though due process of law does not necessarily require judicial machinery to fix values in condemnation, still, because of the direct invasion of private right, courts will treat it as a common-law suit whenever it is brought before a court, and it becomes removable as such to the federal court."

The quotation also appears applicable to the instant situation under the Minnesota statutes. In principle, the state district court, on appeal, is acting on the facts existing, and under a law and rules already made by the legislature and administrative officers. It does not hold an investigation, or create rules for the future. Judicial ditch proceedings in Minnesota, like the ones in the Road District case, are also similar to condemnation cases (State ex rel. Kenney v. Nelson, 116 Minn. 424, 133 N.W. 1010) which, as the writer of the opinion noted, were considered judicial proceedings.

The fact that upon appeal the court in Minnesota does not declare the lien to exist upon the property (it arises when the county auditor later files his lien statement) is, contrary to the petitioners' contention, not controlling. The amount of the benefits

to be received by the railways' properties is set in money. The court sets the amount. The amount of the assessment lien against the property actually becomes a clerical act by the county authorities, who compute what per cent of the total benefits will be received by the railroad companies, and, therefore, what per cent of the total cost should be assessed against their tracts. 9 M.S.A. §§ 106.341, 106.351, 106.361. The determination of the tax assessment is computation, not adjudication, in Minnesota. The tax assessment becomes a lien automatically by virtue of the statute when the auditor files his lien statement, which shows the amount of the assessment. 9 M.S.A. § 106.351. The court does not declare the lien. Consequently, in reality, the lien does result from the court's determination and order concerning benefits received, for the benefits are the adjudicated basis for computing the tax. No other order, either administrative or judicial, is required.

▇▇▇ The petitioners contend that no controversy exists because no adverse parties exist, and that if a controversy does exist, it is with the State of Minnesota, which is not a citizen for purposes of diversity jurisdiction in federal courts. The county is not a party. It has no pecuniary interest or other interest in the matter except as the unit which will be responsible for determining and collecting the assessment based upon the results of the question now before the court. The county is not urging the construction of the ditch. It is a party only in the sense that it is charged by the state with working out the project and its financial phases. State ex rel. Kohler Contracting Co. v. Hansen, 140 Minn. 28, at pages 30, 32, 167 N.W. 114, at page 115. It is not a party to the controversy. The interest of the state in the project is no different in principle from the county's interest. The county is the state's agent in working out the project and its financial phases. State ex rel. Kohler Contracting Co. v. Hansen, supra; County of Rice v. LaCroix, 175 Minn. 8, at 12, 220 N.W. 157, at page 159, 958. The state has no interest in establishing or refusing to establish the ditch.

▇▇▇ The parties to the controversy here appear to be the petitioners for the ditch, and the railroads. This was recognized without discussion by the Minnesota Supreme Court in State ex rel. Kenney v. Nelson, supra. In that case a landowner appealed the court's determination of the benefits and damages to his land to the district court. That court held that the burden of proving the benefits and damages suffered by the land was upon the petitioners for the ditch. The Minnesota Supreme Court, to which the petitioners took certiorari, stated the issue in the lower court as follows [133 N.W. 1012]: "When the appeals came on for trial, a question arose as to which *party*—the petitioners for the ditch, or the appellants, landowners whose lands were assessed for benefits—had the burden of proof." (Emphasis supplied.)

In County of Rice v. LaCroix, supra [175 Minn. 8, at page 12, 220 N.W. 157, at page 159], the Supreme Court again referred to the position which the petitioners for the ditch held in the ditch proceedings. There the petitioners were defendants. The court held: "The defendants here were the petitioners that initiated the proceedings and were parties thereto * * *."

The court concluded that they continued to be parties, even after dismissal of the proceedings, in order that they could be held responsible for costs and expenses of the proceedings. Present statutory law has not changed their status from that recognized in these two cases. The petitioners still initiate the proceedings, as noted above, and they still are liable for the costs and expenses if the proceedings are dismissed. 9 M.S.A. §§ 106.041, 106.051, 106.061. The petitioners are parties if for no other reason than to avoid the reduction of benefits or addition of damages to an extent which will prevent the total benefits from being less than the cost of the project and causing a dismissal which imposes upon them the obligation to pay costs of the proceedings. Petitioners really are the moving force to the proceedings.

Petitioners suggest that other landowners involved in the proceedings are parties because their assessment lien will be increased if the benefits assessed against the railroads

are decreased. Petitioners point out that those other landowners were not served with notice of the removal, but if they are not parties to the judicial proceeding on appeal, then they are not entitled to any notice of the removal. Section 106.631 of 9 M.S.A. clearly indicates that other landowners need not be parties to the appeal. One landowner can appeal his part of the proceedings independently of the others. No notice to the other landowners is required by the statute. The determination of benefits to one tract does not affect the amount of benefits assessed against the other tracts. Although a lowering or raising of the benefits assessed against one tract will increase or decrease the amount of the assessment lien which is placed against the other tracts of land (the amount of the lien is a direct proportion between the benefits received by that particular tract and the cost of the ditch), the creation of the lien is not a part of the judicial proceedings now before the court. That is an independent part of the statutory plan.

Petitioners also suggest that the action was removed to this court by the ones who commenced it, that is, the railroads. The railroads did file the appeal, but, as pointed out by Judge Sanborn in In re Chicago, Milwaukee, St. Paul & Pacific R. Co., supra, the mere fact that the railroad is the party who takes the appeal is not conclusive of who is the party plaintiff, and who is the party defendant. The court must align them according to their respective interests. Here, as in the last-cited case, the railroad is actually the defendant. It here is seeking to protect its land from an assessment of benefits in a proceeding which originally was instituted by other parties.

Petitioners also claim that the controversy does not involve $3,000. That claim, however, is based upon the theory that the assessment of benefits does not create a controversy. It is based upon the theory that no controversy could exist until the tax lien is imposed. This theory has been rejected above. That rejection also disposes of the claim concerning jurisdictional amount, for the benefits assessed against each railroad here exceed $3,000.

The timeliness of the removal is questioned by the petitioners. The argument and authority in support of the point here made are not persuasive, and I know of no authority sustaining petitioners on said question.

The views herein set forth lead to the conclusion that the case presented to this court for determination is a judicial controversy properly removable and properly removed to this court. The motion to remand it to the state court should be, and hereby is, in all things denied. It is so ordered.

An exception is reserved to the moving parties.