STATE ex rel. N. E. WAIT v. LUTHER L. BAXTER and Another.[1]

May 29, 1908.

Nos. 15,736—(22).

**County Ditch—Construction of Act.**

The first proviso to section 1, c. 230, Laws 1905, relating to public ditches, construed, and *held* that in establishing a public ditch, if waters are to be diverted from their natural course, the ditch must follow the general direction of the watercourse and terminate therein, whenever it is practicable so to do; otherwise there may be, so far as reasonably necessary, a departure from the watercourse in the route and termination of the ditch.

Application to this court for a writ of prohibition commanding the judge and clerk of the district court for the Seventh judicial district from proceeding further with the hearing of the proceedings to es-

[1] Reported in 116 N. W. 646.

tablish the county ditch described in the opinion. An order to show cause was granted and heard. Writ denied, and order to show cause discharged.

*Geo. W. Peterson, A. B. Church, E. B. Wood,* and *C. J. Gunderson,* for relator.

*Constant Larson* and *James C. Tarbox,* for respondents.

START, C. J.

Application for a writ of prohibition, which was heard on an order to show cause. A petition was filed in the district court of the county of Douglas for the establishment of a judicial ditch in the counties of Douglas and Todd. It appears from the petition that the main ditch begins in the town of Belle River, in the county of Douglas, runs thence southeasterly into Crooked lake, thence northeasterly through the lake, thence easterly into and through Hanford lake, and thence easterly into and through Osakis lake to Sauk river. The surplus waters of Crooked lake and Hanford lake (they are practically one) drain naturally into a small creek and ultimately reach Long Prairie river, but if the proposed ditch is established they will be diverted from their natural course and drained into Sauk river. The claim of the relator is to the effect that the district court has no jurisdiction under any conditions, to establish a ditch whereby waters will be diverted from their natural bed, unless the ditch terminates therein. The correctness of this claim is the only question to be decided.

The question cannot be solved by applying to the admitted facts the law as to surface waters and private drains; for, as said in State v. Board of Co. Commrs. of Isanti County, 98 Minn. 89, 107 N. W. 730, "no good reason suggests itself for extending that doctrine to cases of county ditches, in which the public may undertake to drain large tracts of land belonging to many proprietors, not exclusively of surface waters, and to divert the resulting waters and cast them in large and injurious quantities upon the lands of others." The very purpose of the law providing for the establishment of public ditches is to secure the drainage of large areas of land, which otherwise could not be drained, owing to the conflicting interests of private parties and the necessity in many cases of diverting waters from their natural courses. The statute authorizing public ditches is based upon the

fact that some landowners will be benefited by the establishment of such a ditch and others injured by the diversion of waters from their natural bed; hence it provides for the exercise of the power of emi-, nent domain, the payment of damages, and the assessment for benefits.

Laws 1905, p. 303, c. 230, § 1, confers jurisdiction, in general terms, upon boards of county commissioners, and upon district courts when the ditch is to be in more than one county, to establish and cause to be constructed public ditches, with power, for that purpose, to widen, deepen, straighten, or change the channel or bed of any creek, river, lake, or other natural watercourse: "provided, that when in any such proceedings the waters of any creek, river, or other watercourse are diverted from their natural bed by such artificial ditch or drain, such ditch or drain shall as nearly as practicable follow the general direc- tion of such creek, river or watercourse, and terminate therein."

It is the contention of the relator that this proviso operates as an absolute prohibition of the diversion of waters from a natural water- course, unless the waters are again returned to such course, and that the ditch must terminate therein in all cases. If this be the correct construction of the proviso, then the district court has no jurisdiction to establish the ditch in question; for it is admitted that the ditch, if constructed, would divert waters from their natural course, and that it does not terminate therein. Such a construction, however, would be a serious limitation upon the power to establish public ditches when- ever public health and utility required it; for then there could be no diversion of waters, unless the ditch terminated in the course from which the waters were diverted, whether it was practicable so to do or not. This construction practically emasculates the grant of power to establish public ditches, and it cannot be accepted unless it is ob- vious that such was the legislative intention. A mere reading of the proviso, in connection with the grant of power, indicates the sense in which the legislature used the phrase "shall as nearly as practicable follow the general direction of such creek, river or watercourse, and terminate therein." It means that the ditch shall follow the general direction of such creek, river or watercourse, and terminate therein, so far as may be practicable. The provisions of our ditch laws must be liberally construed, so as to promote the public health and the drainage and reclamation of wet or overflowed land. State v. Board

of Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216, 60 L. R. A.; 161.

So construing the proviso, we hold that in establishing a public ditch, if waters are to be diverted from their natural course, the ditch must follow the general direction of the watercourse, and terminate therein, whenever it is practicable so to do; otherwise there may be, so far as reasonably necessary, a departure from the watercourse in the route and termination of the ditch. It follows that the district court has jurisdiction of the proceedings to establish the ditch in question.

Writ denied, and order to show cause discharged.