IN RE PETITION FOR CONSTRUCTION OF LATERAL TO
CONNECT WITH JUDICIAL DITCH NO. 7,
MARTIN AND FARIBAULT COUNTIES.
ADOLPH F. LAUE AND OTHERS v. COUNTY OF
FARIBAULT.[1]

December 19, 1952.

Nos. 35,723, 35,724.

*Gaarenstroom & Gaarenstroom,* for appellants.
*Morse & Frundt,* for respondent.

KNUTSON, JUSTICE.

Appeals from two orders of the district court of Faribault county affirming an order of the county board of Faribault county establishing an open ditch lateral to connect with judicial ditch No. 7 of Faribault and Martin counties.

The facts are not in dispute. Judicial ditch No. 7 of Martin and Faribault counties was constructed in accordance with an order of the district court of Martin county dated and filed on October 10, 1910. It extends into and drains land in both Martin and Faribault counties. Lands in both counties were assessed for benefits to be derived from the construction of the ditch.

At the time ditch No. 7 was established and constructed, one Emma F. Holland owned all of section 33, in township 101 north,

---

[1]Reported in 56 N. W. (2d) 435, 57 N. W. (2d) 29.

range 28 west, in Faribault county, referred to hereinafter as section 33. Subsequently, section 33 was sold to four different purchasers, each acquiring one quarter section. In the engineer's report in the original 1910 proceedings, it appears that branch S of ditch No. 7 was designed with 73 stations, it being 7,300 feet in length, and continued southerly from the main ditch to the south boundary line of section 33. The viewers' report shows section 33 benefited to the extent of $8,155. In the final order of the court, however, branch S was reduced from 7,300 feet in length to 1,200 feet and the benefits to section 33 were reduced to $3,200. As so established, branch S extended only 100 feet into section 33.

On May 19, 1947, a petition was filed by L. E. Frederickson, who owns the southeast quarter of section 33, for the establishment and construction of a lateral to connect with and empty into branch S of ditch No. 7. All of the land traversed by the proposed lateral is in section 33, Faribault county. The petition was filed with the county board of Faribault county. After a hearing, the county board ordered the establishment of the proposed lateral. Separate appeals to the district court from the order of the county board were filed by Adolph F. Laue and Mary Laue, who own the northeast quarter of section 33 and who were assessed for benefits for the construction of the original ditch and have also been assessed for benefits for the construction of the proposed lateral, and by Olander Johanson, Hans P. Jensen, George W. Blomstrom, George K. Wallentine, Alex Buchan, Carl Isenberg, and D. W. Stephenson, who own lands in Martin county and who were assessed for benefits for the construction of ditch No. 7 and for subsequent repairs thereof but who are not assessed for benefits for the construction of the proposed lateral. The district court affirmed the order of the county board, and these appeals followed.

We need not determine whether appellants Johanson, Jensen, Blomstrom, Wallentine, Buchan, Isenberg, and Stephenson may appeal without first becoming parties to the proceeding. See, In re Petition for County Ditch No. 15, Chippewa County, 238 Minn. 15, 55 N. W. (2d) 305. The appeals of Adolph F. Laue and Mary

Laue sufficiently raise the question presented here. The question presented is whether the county board or the district court has jurisdiction of the petition here involved.

Appellants contend that the proposed ditch is an extension of branch S and comes within M. S. A. 106.501. Respondent contends that it is a lateral and is governed by § 106.521.

There is much merit in appellants' contention. The course of the proposed ditch follows almost the identical course of that part of branch S originally proposed but eliminated in the final order of the court establishing ditch No. 7. The engineer in his report on the proposed ditch refers to the ditch as an "extension of Branch S and such laterals, as I deemed necessary * * *." The title to the notice of hearing issued by the county auditor reads: "IN THE MATTER OF THE PETITION FOR THE EXTENSION AND IMPROVEMENT OF BRANCH S OF JUDICIAL DITCH No. 7 M & F." The body of the notice contains this language:

"Take notice, that whereas a petition for the extension and improvement of Branch S of Judicial Ditch No. 7 M & F of Faribault County, Minnesota, has been filed in the office of the County Auditor of said Faribault County * * *."

In the final paragraph of the notice we find the following:

"Now, therefore, the petitioners and all owners of the several tracks [tracts] of land, and corporations, public or private, affected by the said drainage system, are hereby notified that a hearing on said report of said engineer will be held * * *."

It is clear that, if the ditch is an extension of branch S of the original ditch and governed by § 106.501, the district court, and not the county board, had jurisdiction.[2] However, the district court

---

[2]Section 106.501, subd. 1, as far as here pertinent, reads:

"Petition. Before any public drainage system theretofore established and constructed shall be improved by tiling, enlarging or *extending*, the following procedure shall be observed. In the case of the improvement of a ditch system lying wholly within the county, a petition signed by not less than 26 per cent of the resident owners of the property affected thereby or by the owners of not less than 26 per cent of the area of the property

treated the ditch as a lateral governed by § 106.521; therefore, for the purpose of this decision, we shall so consider it.

By L. 1947, c. 143, our legislature adopted a new and comprehensive drainage code. Prior to the adoption thereof, a commission was created by L. 1945, c. 491, for the purpose of examining existing laws, and it was authorized to prepare, propose, and recommend revisions and codification of the laws. L. 1947, c. 143, was enacted pursuant to such recommendation. In most instances where changes from existing laws were recommended the reason therefor was appended by the commission in its report to the legislature as a note to the suggested draft of the section involved. Section 106.521 replaced former §§ 106.56 to 106.59. Under these sections, as they existed prior to the 1947 codification, it is clear that the district court, and not the county board, had jurisdiction over petitions for the construction of a lateral having a judicial ditch as its outlet.[3] In the adoption of the new code the language of the section involved was changed so that § 106.521 now reads:

"Persons owning property in the vicinity of an existing public drainage system may petition for a lateral or a lateral system con-

---

affected shall be filed with the auditor. In the case of a drainage system affecting two or more counties, such petition shall be filed with the clerk of the district court having jurisdiction of the system." (Italics supplied.)

[3]Section 106.56 as it existed prior to the adoption of L. 1947, c. 143, as far as here pertinent, reads:

"When two or more parties owning land adjoining or in the vicinity of any public drainage system or in the vicinity of any body of water forming a part of or connecting with any such system, drain, or outlet shall petition the county board, where an outlet is desired in a public drainage system lying wholly within one county, or the district court that originally ordered the system, where the drainage system extends into two or more counties, asking to be permitted to construct a lateral to connect with the system described in the petition * * * and file the petition with the county auditor, in case of proceedings to use a drainage system lying wholly within one county as an outlet, or with the clerk of the district court where the petition for the construction of the original system was filed, in case of judicial proceedings, * * * it shall be the duty of the county board, in case of county proceedings, or the district court, in case of judicial proceedings, to appoint a competent civil engineer * * *."

necting such lands with the drainage system. The petition shall be signed by 26 per cent of the resident owners of the property or by the owners of 26 per cent of the area of the property traversed by such lateral or lateral system. If the lands affected by the lateral are situated in one county, the petition shall be filed with the auditor. If such lands extend into two or more counties, the petition shall be filed with the clerk. * * *"

In the report of the interim commission submitted to the 1947 legislature, we find the following note appended to the section here involved:

"Section 52 [which became M. S. A. 106.521] is designed to cover laterals into existing ditches, or what might be termed as sub-ditches. The present law is contained in Sections 106.56 to 106.59, inclusive, and sets forth the details for the entire proceeding. It appears all that is needed is a provision for the original petition and that thereafter the proceedings may be the same as for any other ditch. The present law requires petition by two or more land-owners. The proposed law permits petition by 26 percent of the landowners."

It is significant that this note refers to the change requiring a petition signed by 26 percent of the landowners instead of the two or more landowners theretofore required. No mention is made of any change in the jurisdiction of the district court or county board over the petition. It is likewise important to note that the commission was of the opinion that after the original petition the proceeding should be the same as for any other ditch, leaving other sections of the code to provide the procedure and machinery after the filing of the petition.

In the drafting of § 106.521, the legislature, as well as the interim commission, when providing the requirements for signing the petition, used the words:

"* * * The petition shall be signed by 26 per cent of the resident owners of the property or by the owners of 26 per cent of the

area of the property *traversed* by such lateral or lateral system."
(Italics supplied.)

On the other hand in the provision of the same section pertaining
to the filing of the petition we find the following language:

"* * * If the lands *affected* by the lateral are situated in one
county, the petition shall be filed with the auditor. If such lands
extend into two or more counties, the petition shall be filed with
the clerk." (Italics supplied.)

Obviously, the language "affected by" has a broader significance
than the words "traversed by."

Did the legislature, by the change in terminology noted above,
intend to vest in the county board jurisdiction over a petition
theretofore reposed in the district court for the establishment of
a lateral having a judicial ditch for its outlet? We think not. The
whole plan of the drainage code seems to be to give the district
court jurisdiction over a ditch or drainage system running in or
through more than one county. No reason has been suggested why
it should have been intended to change this plan with respect to
the establishment of laterals any more than other parts of a ditch
system, such as improvements or extensions. It would be illogical
to hold that the legislature intended that under the new code the
district court should retain jurisdiction over an extension of a
ditch or branch thereof but not over a lateral emptying into the
ditch. If such was the legislative intent, it should appear in un-
mistakable language.

The drainage code itself does not define the term "lateral." Not
much authority is to be found which does. In People ex rel. Par-
menter v. Wilder, 257 Ill. 304, 308, 100 N. E. 932, 933, the Illinois
court said:

"* * * 'Lateral' means coming from the side, and in drainage
a lateral ditch is a side ditch extending from the side of a main
ditch."

The term "lateral" has more frequently been construed in cases
involving the construction of railway lines, and it has generally

been held that a lateral is nothing more or less than an offshoot from the main line or stem. Blanton v. Richmond, F. & P. R. Co. 86 Va. 618, 10 S. E. 925; B. & O. R. Co. v. Waters, 105 Md. 396, 66 A. 685, 12 L.R.A.(N.S.) 326; Union Pac. R. Co. v. Anderson, 167 Or. 687, 120 P. (2d) 578. See, also, 24 Wd. & Phr. (Perm. ed.) 308.

Section 106.011, subd. 17, contains the following definitions:

" 'Ditch,' 'drainage system,' 'public drainage system,' 'improvement,' or 'drainage proceeding' means either an open or tiled system and *all laterals* or parts thereof; * * *." (Italics supplied.)

Other sections of our code throw some light also on the proper construction of the words "affected by" as used in § 106.521. In § 106.501, which deals generally with improvements, we find the following language:

"Before any public drainage system theretofore established and constructed shall be improved by tiling, enlarging or extending, the following procedure shall be observed. In the case of the improvement of a ditch system lying wholly within the county, a petition signed by not less than 26 per cent of the resident owners of the property affected thereby or by the owners of not less than 26 per cent of the area of the property affected shall be filed with the auditor. In the case of a *drainage system affecting* two or more counties, such petition shall be filed with the clerk of the district court having jurisdiction of the system." (Italics supplied.)

Section 106.471, subd. 4, dealing with repairs to an existing drainage system, contains the following language:

"Upon the filing of a petition by any party or corporation, municipal or otherwise, interested in or *affected by a drainage system,* with the auditor in the case of a drainage system lying wholly within the county, or with the clerk of the district court having jurisdiction over said ditch in the case of a drainage system affecting two or more counties, therein setting forth that the drainage system is out of repair, it shall be the duty of the auditor in the

case of a drainage system lying wholly within the county to present the same to the county board at its next meeting, and of the clerk in the case of a *drainage system affecting* two or more counties, to present the petition to the judge of the court within ten days from the filing thereof." (Italics supplied.)

Section 106.521 must be read with other portions of c. 106. Section 106.531, as far as here pertinent, reads:

"After the construction of any county or judicial ditch, no public or private lateral, either open or tiled, for the drainage of land not assessed for benefits for such ditch, shall be constructed so as to use the ditch as an outlet without having first secured express authority so to do from the county board, in the case of a system lying wholly within one county, or from the district court that originally ordered the construction, in the case of a system extending into two or more counties. Any person desiring to so utilize an existing ditch shall petition the board or court."

No such permission has been obtained here, and it is respondent's contention that it is not necessary for the reason that all of the land in section 33 was assessed for benefits in the construction of the original ditch No. 7. One of the main purposes of requiring such consent is to enable the district court, in case the outlet to be used is a judicial ditch, or the county board if it is a county ditch, to determine whether the outlet ditch has sufficient capacity to handle the increased volume of water which will be dumped into it by the construction of the proposed lateral. If it becomes necessary to improve or enlarge the outlet ditch to prevent land drained by it from being inundated by water flowing into the ditch from the new ditch contemplated, provision is made therefor by § 106.511. Here, again, the district court would have jurisdiction of the petition in a case such as that now before us.

We are asked to hold that the district court has lost the opportunity to determine whether the outlet ditch which is under its jurisdiction has capacity to handle the additional water which will flow into it on construction of the proposed lateral merely because

land traversed by the proposed lateral has been assessed for some benefits in the construction of the original ditch. It would seem more logical to hold that the reason such consent is not necessary is that the district court having jurisdiction over the construction of the outlet ditch retains jurisdiction over laterals flowing into it because such outlet ditch is "affected by" such lateral. Only by so doing can we justify the exception to the rule that consent must be obtained to use the original ditch as an outlet at all.

We have held on several occasions that those who have paid assessments for benefits or received damages for the construction of a drainage system have a property right in the maintenance of such ditch or drainage system as it was originally constructed and that such right may not be interfered with without due process of law. In re Petition of Jacobson re County Ditch No. 24, 234 Minn. 296, 48 N. W. (2d) 441. It could hardly have been the intention of the legislature that the district court should be divested of jurisdiction over a drainage system running in or through more than one county by a process of bisection.

It is our opinion that the lands affected by the lateral here involved (if it is a lateral at all) extend into two or more counties and that the district court, and not the county board, has jurisdiction over it.

In view of our decision on the jurisdictional question, it is not necessary to determine other questions raised by appellants.

Reversed.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On February 6, 1953, the following opinion was filed:

PER CURIAM.

Respondent has appealed from the clerk's taxation of costs in this court contending that in this proceeding respondent, county of Faribault, was performing a governmental function for and on behalf of the state of Minnesota in its sovereign capacity and, therefore, is not liable for costs and disbursements in this court.

174

In a county ditch proceeding the county is not a party to the controversy except in the sense that it has been charged with the duty of performing certain functions for and on behalf of those interested in the establishment of the ditch. The petitioners on the one hand and the objectors on the other are ordinarily the real parties to the controversy. In the trial the county has no interest in the outcome. In State ex rel. Kenney v. Nelson, 116 Minn. 424, 429, 133 N. W. 1010, 1012, we said:

"* * * When the appeals came on for trial, a question arose as to which *party*—the petitioners for the ditch, or the appellants, landowners whose lands were assessed for benefits—had the burden of proof." (Italics supplied.)

In State ex rel. Kohler Contr. Co. v. Hansen, 140 Minn. 28, 30, 167 N. W. 114, 115, we said:

"* * * The county is not a party, in the sense that a landowner is, nor in a proprietary capacity, and its property interests are not involved as are those of a landowner whose land is affected by assessments, nor is it a party to the proceeding at all except as an agency of the state charged with the financing and working out of the project."

The Kohler case was followed in the later case of County of Rice v. LaCroix, 175 Minn. 8, 220 N. W. 157, 958.

In In re Judicial Ditch No. 24 (D. C.) 87 F. Supp. 198, after reviewing our cases, the federal district court for the district of Minnesota, Judge Donovan presiding, came to the same conclusion. It was there contended that no controversy existed because no adverse parties existed and that if a controversy did exist it was with the state of Minnesota, which is not a citizen for purposes of diversity jurisdiction in federal courts, and, therefore, the case could not be removed to the federal court. In deciding the case against this contention, the court said (87 F. Supp. 202):

"* * * The county is not a party. It has no pecuniary interest or other interest in the matter except as a unit which will be re-

sponsible for determining and collecting the assessment based upon the results of the question now before the court. The county is not urging the construction of the ditch. It is a party only in the sense that it is charged by the state with working out the project and its financial phases. * * * The state has no interest in establishing or refusing to establish the ditch."

Petitioners are required by statute, upon filing the petition, to also file their bond conditioned upon payment of all costs and expenses if the petition is dismissed. While it may be true that costs and disbursements in this court will technically be taxed in the first instance against the county, the bond given by petitioners constitutes the fund out of which they will ultimately be paid. Petitioners, not the county, are in truth and fact the respondents here and are those against whom the costs are taxed even though the judgment technically may be entered against the county. It might be noted that the attorneys for respondent are the attorneys who appeared for petitioners throughout the proceeding. The county attorney has made no appearance here, which is a further indication of the fact that it is the petitioners, not the county, that are the real party to the controversy.

If the proceeding is dismissed, the costs are paid out of the bond. If the ditch is established or the proceeding involves the repair of an established ditch, costs are paid out of the ditch fund. In re Petition for Repair of County Ditch No. 1, 237 Minn. 358, 55 N. W. (2d) 308. In either event, the county is ultimately reimbursed.

The clerk's taxation of costs is affirmed.

Affirmed.