# IN RE PETITION FOR COUNTY DITCH NO. 53, CHIPPEWA COUNTY.
## RENO SCHULTZ AND OTHERS v. COUNTY OF CHIPPEWA AND OTHERS.[1]

February 13, 1953.

No. 35,854.

[1]Reported in 57 N. W. (2d) 158.

*Kief & Kief*, for appellants.
*Baker & Carlson*, for respondents.

KNUTSON, JUSTICE.

This is an appeal from a judgment entered pursuant to findings of fact, conclusions of law, and order for judgment after trial by the district court of an appeal from an order of the county board dismissing a petition for the improvement of a county ditch.

County ditch No. 9 of Chippewa county was established in 1907 and constructed shortly thereafter. It was a rather shallow "bull ditch" constructed by pulling a large plow with a capstan, which resulted in a ditch of uniform depth over its course, the plow cutting the same depth without regard to grade as it was pulled over the contour of the land. It was intended to drain an area of about eight square miles. It emptied into a natural watercourse known as Dry Weather Creek, which in turn emptied into the Chippewa River.

In 1916, county ditch No. 22 was established by the county board of Chippewa county and was constructed about 1920. That ditch commenced some two or more miles from the confluence of Dry Weather Creek and the Chippewa River and followed the bed of the creek some distance beyond the point where ditch No. 9 emptied into the creek. It was constructed so as to drain some 80 square

miles of land. It was a fairly large open ditch, having a ten-foot bottom below the point where ditch No. 9 emptied into it and an eight-foot bottom above that point.

On July 26, 1946, a petition was filed for the establishment of county ditch No. 53. The main course of this proposed ditch was to follow the course of old ditch No. 9, but it included several additional laterals and was intended to drain a number of potholes and sloughs which had not been drained by ditch No. 9. It is fair to say that it was intended to drain the same area as ditch No. 9 but more effectively. While old ditch No. 9 had a bottom width of about 18 inches, ditch No. 53 was to have a bottom width of about four feet. It was also to be much deeper and constructed to grade. On May 1, 1947, after proper notice, the county board met to consider the petition at a preliminary hearing. The board then found that the ditch was necessary and practical, that it would be a public benefit and promote the public health, and that it had a sufficient outlet. The board ordered a detailed survey made by an engineer. After receiving the engineer's report of his survey, the county board met again on November 3, 1949, after proper notice to interested parties. Thereafter the board made and filed its order rejecting the petition on the ground that the proposed system "is not practicable and will not be of public benefit and utility." An appeal was taken to the district court. After a trial, the court affirmed the order of the county board dismissing the petition. Judgment was entered, and this appeal followed.

In its findings, the court determined that Dry Weather Creek, ditch No. 22, and ditch No. 9 are all partly obstructed by natural growths and silt and that ditch No. 22 does not now have sufficient capacity to carry the water that is presently being drained into it which results in frequent flooding of land adjacent to it. The court also found that the benefits which would result from the construction of ditch No. 53 exceed the damages, "but that this does not take into consideration the lands lying below the outlet of said ditch and that said lower lands would be damaged to a considerable extent by the construction of County Ditch No. 53." The court also found

that proposed ditch No. 53 is necessary, "but that it would not be of public benefit or utility, nor would it have a sufficient outlet."

Subsequent to the filing of the petition and prior to the determination of the county board, one Isaac U. Eichelberger acquired a tract of land which would be within the drainage area of the proposed ditch. He was one of the county commissioners of Chippewa county and was present when the county board acted upon the petition. The trial court found that he had taken no part in the proceedings.

Appellants state as the only question involved in the appeal that "The Court erred in upholding the action of the County Board," without specifying in what respect the court erred. This is not in compliance with our rules. We apprehend that the questions presented are these:

(1) Does M. S. A. 106.531, requiring consent to use an established ditch as an outlet for a proposed lateral, have any application to the facts of this case?

(2) Once the right to use ditch No. 22 as an outlet for ditch No. 9 has been acquired, may the court interfere with that right when ditch No. 9 is enlarged by the construction of a new ditch intended to drain the same area but having greater capacity than the old ditch?

(3) May the trial court, on appeal from an order of the county board, try the case *de novo?*

■ It is the contention of appellants that inasmuch as the petition here involved was filed on July 26, 1946, L. 1947, c. 143, § 53 (M. S. A. 106.531),[2] has no application because of the saving clause

[2]"After the construction of any county or judicial ditch, no public or private lateral, either open or tiled, for the drainage of land not assessed for benefits for such ditch, shall be constructed so as to use the ditch as an outlet without having first secured express authority so to do from the county board, in the case of a system lying wholly within one county, or from the district court that originally ordered the construction, in the case of a system extending into two or more counties. Any person desiring to so utilize an existing ditch shall petition the board or court. Upon filing

contained in § 67 of the 1947 act.[3]

We think that it is immaterial whether the 1947 act or the former law is applicable. Irrespective of statute, we have held on numerous occasions that once a ditch system is established owners of land who have recovered damages or have been assessed benefits for its construction have a property right in the maintenance of the ditch in the same condition as it was when originally established which right cannot be divested without due process of law. In re Petition of Jacobson re County Ditch No. 24, 234 Minn. 296, 48 N. W. (2d) 441; In re Petition for County Ditch No. 15, 238 Minn. 15, 55 N. W. (2d) 305.

■ And the fact that the landowners whose lands are drained by ditch No. 9 had acquired the right to an outlet for that ditch into

the petition, the auditor, or the clerk with the approval of the judge, shall fix a time and place for hearing thereon and shall give notice of the hearing by publication. Upon the hearing the board or court shall consider the capacity of the outlet ditch and, if consent be given to construct the lateral, shall fix by order the terms and conditions for the use of the ditch as an outlet and shall fix the amount that shall be paid therefor. No lateral shall be constructed using the ditch as an outlet until the sum fixed by the order is paid by the petitioner to the county treasurer of the county wherein petitioner's property is located. The order shall also describe the property to be benefited by the lateral and shall fix the amount of benefits to such property for the outlet. The property so benefited shall be liable for assessments thereafter levied in such ditch system, on the basis of the benefits so found, the same as though such benefits had been determined in the original order establishing the ditch."

[3]"Minnesota Statutes 1945, Sections 105.13 to 105.36, both inclusive, Sections 106.01 to 106.79, both inclusive, Sections 106.81 to 106.93, both inclusive, Chapters 107, 108, and Sections 113.07 to 113.22, both inclusive, are repealed save only as to unfinished proceedings instituted under any of said chapters or sections and not completed at the effective date of this act. Any proceedings so instituted and incomplete at the effective date of this act may be completed under the provisions of the laws under which the same were instituted; and for such purpose the provisions of such laws shall continue and apply to such proceedings. In proceedings pending at the effective date hereof, the board or court may avail itself of the provisions of this act when such course appears to be in the public interest."

ditch No. 22 does not confer upon them the right to use ditch No. 22 as an outlet for the proposed ditch No. 53. Whether we consider ditch No. 53 an entirely new ditch or drainage system or we consider it an enlargement or improvement of ditch No. 9, it is clear from the evidence that it will carry the spring runoff as well as surface water in times of excessive rainfall into ditch No. 22 much faster and in greater volume than ditch No. 9 is capable of doing. The court's finding that ditch No. 22 and its outlet in Dry Weather Creek are now inadequate to carry the water drained into them is amply sustained by the evidence. The inevitable conclusion is that the construction of the proposed ditch will cause water from the spring runoff and the runoff of surface water in times of excessive rainfall to drain into ditch No. 22 much faster than it now does from ditch No. 9. As far as the rights of landowners adjacent to ditch No. 22 are concerned, the same rule should apply whether the likely damage is to result from the use of the established ditch as an outlet for an enlarged old ditch or from its use as an outlet for a new ditch. It matters little to the landowners adjacent to ditch No. 22 whether their lands are flooded on account of water coming from an entirely new source or from the acceleration of drainage from an old source. The invasion of their property rights is the same in either event. See, In re Petition for County Ditch No. 15, 238 Minn. 15, 55 N. W. (2d) 305.

It may be that our drainage code should have in it some provision whereby landowners desiring to use an established ditch or drainage system as an outlet for a separate and distinct ditch or drainage system could institute proceedings to have the established outlet ditch enlarged or improved so that it would have sufficient capacity to handle the additional water which would be drained into it by the construction or improvement of the contemplated ditch, in which proceedings the cost of enlarging the outlet ditch could be assessed against those who would be benefited therefrom with due regard being given to the constitutional requirements of due process. It would seem that under our present drainage code there are no such provisions. M. S. A. 106.531 provides for the use of a drain-

age system as an outlet for a lateral, but it would seem that an entirely separate ditch or drainage system could not be construed to be a lateral. Under § 106.011, subd. 17, we find the following definition:

" 'Ditch,' 'drainage system,' 'public drainage system,' 'improvement,' or 'drainage proceeding' means either an open or tiled system *and all laterals* or parts thereof; * * *." (Italics supplied.)

A lateral, once established, becomes part of the ditch or drainage system to which it is attached. We recently had occasion to consider the meaning of the word "lateral" in In re Petition re Judicial Ditch No. 7, 238 Minn. 165, 56 N. W. (2d) 435. Under our present drainage code (M. S. A. 106.511), the county board or the owners of land adjacent to the outlet ditch may institute proceedings for the enlargement of such outlet ditch so as to prevent flooding. Our old law (M. S. A. 1945, § 106.77, *et. seq.*) contained provisions whereby the ditches could be consolidated into one ditch system in one proceeding. In the adoption of the new drainage code provisions for the consolidation were eliminated,[4] but the old provisions for improvement of the outlet on petition of the county board or the owners of land adjacent thereto were retained (§ 106.511). It would seem that under our present code there is no way in which landowners desiring to use an established ditch as an outlet for a new ditch, or for a ditch which is improved by enlargement, may institute proceedings for the enlargement of the capacity of the ditch which they desire to use as an outlet when the county board or the landowners adjacent to the outlet ditch refuse to take such action.

It is obvious that those interested in the construction of ditch No. 53 are in need of drainage. The trial court has so found. Under our present code there is no way in which they can institute proceedings to enlarge ditch No. 22 so that it will have a sufficient capacity to handle the water which would be drained into it if

---

[4]See, Report of the Interim Commission to Revise and Codify Drainage and Water Resources Laws submitted to the legislature of the state of Minnesota, 1947.

ditch No. 53 were constructed. Nor can it be constructed without regard to the damage it will cause to those landowners adjacent to ditch No. 22. However true this may be, it presents a problem the solution of which lies with the legislature and not with the courts, even though the result may be unfortunate to those desiring relief which could be afforded by the construction of ditch No. 53.

■ M. S. A. 106.631, subd. 4, as far as here material, provides that upon appeal from an order of the county board dismissing a petition to establish a drainage system—

"* * * The court shall examine the whole matter and receive evidence to determine whether the findings made by the county board can be sustained. At such trial the findings made by the county board shall be prima facie evidence of the matters therein stated, and the order of the county board shall be deemed prima facie reasonable. If the court shall find that the order appealed from is lawful and reasonable, it shall be affirmed. If the court finds that the order appealed from is arbitrary, unlawful, or not supported by the evidence, it shall make such order to take the place of the order appealed from as is justified by the record before it or remand such matter to the county board for further proceeding before the board. After determination of the appeal, the county board shall proceed in conformity therewith."

This provision became part of our drainage code by amendment under L. 1949, c. 357, § 1.

Appellants contend that the court had no authority under this statutory provision to try the case *de novo* and that it was incumbent upon the court to determine whether the county board's order was lawful and reasonable and, if not, to remand the case to the county board for further action. They further contend that the court had no power to go beyond the determination of the county board in determining whether ditch No. 22 had sufficient capacity to handle the water which would be drained into it by the construction of ditch No. 53. This contention is predicated upon the hypothesis that it was the action of the county board at its original meet-

ing of May 1, 1947, which was under review by the district court. Here again we are confronted by the question whether M. S. A. 1945, § 106.07, as it existed prior to the enactment of L. 1947, c. 143, or § 10, subd. 6, of the 1947 act (M. S. A. 106.101, subd. 6), governs. It matters little, however, which law is applied. With respect to the finality of the determination of the board at its preliminary hearing the old law (M. S. A. 1945, § 106.07, subd. 2) provided:

"The petitioners and all other parties interested may appear and be heard and, if upon full hearing it shall appear that the proposed improvement is not practical and no plan is reported by the engineer whereby it can be made practical or is not of public benefit or utility, or that the outlet is not of sufficient capacity, the petition shall be dismissed; but, if the county board or district court shall be satisfied that the proposed improvement, as outlined in the petition or as modified and recommended by the engineer, is practical, that there is necessity therefor, and that it will be a public benefit and promote the public health, and have an outlet of sufficient capacity, the board or court shall so find and by such order shall designate the change that shall be made in the proposed improvement from that outlined in the petition; these changes may be described in general terms and shall be sufficiently described by attaching to the order and the petition a map drawn by the engineer outlining the proposed improvement thereon and the changes made and thereafter the petition shall be treated as modified accordingly.

"The findings required in this section shall not be construed as conclusive except only to determine the nature and extent of the plan and the necessity for ordering a permanent survey; all questions relative to the practicability and necessity of the proposed improvement shall be subject to further investigation and consideration at the final hearing if the permanent survey discloses facts not discovered in making the preliminary survey."

This provision of our drainage code has had an interesting history. Prior to the adoption of L. 1917, c. 441, questions of propriety, necessity, and practicability were decided at the final hearing.

Heinz v. Buckham, 104 Minn. 389, 116 N. W. 736. The 1917 act changed the procedure, and thereafter the determination of such questions at the preliminary hearing was final. In re Judicial Ditch No. 6, 156 Minn. 95, 194 N. W. 402. The procedure was again changed by L. 1925, c. 415, § 7, and so far as finality is concerned has remained the same since that time.

M. S. A. 106.101, subd. 6 (L. 1947, c. 143, § 10, subd. 6), contains the following provisions respecting the findings of the county board or court at its preliminary hearing:

"The findings hereinbefore required shall be construed as conclusive only as to the sufficiency of the petition, the nature and extent of the proposed plan and the need of a permanent survey, and only as to the persons or parties shown by the engineer's preliminary report as likely to be affected by the improvement. All questions relative to the practicability and necessity of the proposed drain or improvement shall be subject to further investigation and consideration at the final hearing."

It is evident that the determination of the board at its preliminary hearing as to the practicability or feasibility of the ditch is not conclusive but is subject to change when the final plans of the engineer are examined at the final hearing. At its final hearing the board determined that the proposed ditch was not practicable and "will not be of public benefit or utility." It was that order which was under consideration by the trial court on appeal, and that order was affirmed. In determining whether a ditch is practicable, the board must of necessity determine whether the proposed ditch has an adequate outlet. The old law (M. S. A. 1945, § 106.07, subd. 2) specifically required a dismissal of the petition at the preliminary hearing if it was found that the outlet was insufficient, and the same is true under the new code (M. S. A. 106.101, subd. 4). While the county board in its final order dismissing the petition did not specifically state that it had found the outlet insufficient, it did find that the ditch was not practicable. In determining whether a ditch is practicable or not, one of the essential factors is an adequate

outlet. The trial court found specifically that the proposed ditch would not have a sufficient outlet. We find no inconsistency between the two.

■ Under the statute in existence at the time this proceeding was commenced (M. S. A. 1945, § 106.89) the appeal would be tried by the district court *de novo*. In re Judicial Ditch No. 9, 167 Minn. 10, 208 N. W. 417. L. 1947, c. 143, § 63, read about the same as M. S. A. 1945, § 106.89. Section 63 was amended by L. 1949, c. 357, § 1 (M. S. A. 106.631, subd. 4), to read as shown above.

It is not clear what was intended by the change in language when the 1949 amendment was enacted. In Stronge & Lightner Co. v. Commr. of Taxation, 228 Minn. 182, 36 N. W. (2d) 800, we had occasion to consider the effect of a provision of our statutes declaring an order of the commissioner of taxation "prima facie valid" on appeal to the board of tax appeals. We there said (228 Minn. 194, 36 N. W. [2d] 806):

"* * * While it may be true that, if the taxpayer offered no further evidence than the return, the decision of the commissioner would control, it does not follow that when the taxpayer does offer evidence, as it did here, the board is controlled by the decision of the commissioner."

We there held that the effect of a trial *de novo* on appeal from the order of the commissioner of taxation which was prima facie valid simply placed the burden of introducing evidence to overcome the prima facie status of the order on the taxpayer. We believe that the same is true here. The statute provides that the court shall examine the whole matter and receive evidence to determine whether the findings made by the county board can be sustained, and, if it finds that the order appealed from is not supported by the evidence, it shall make such order to take the place of the order appealed from as is justified by the record before it. It would seem that the language of the statute can only mean that, when the appellants in a case such as this proceed with the introduction of evidence, the trial is for all intents and purposes *de novo* as it was under the old statute

and that the court thereupon can make such findings governing the whole case as may be necessary. We do not believe that the court went beyond its powers in determining that the outlet for ditch No. 53 was insufficient. The evidence amply sustains the order of the trial court in that respect.

■ There remains for consideration only the question of what effect the presence of Commissioner Eichelberger had on the validity of the order of the county board. The trial court found that while Eichelberger was present he took no part in the proceedings. This finding is supported by the record. While it might have been better had Eichelberger absented himself entirely, we do not think that his passive presence should invalidate the entire proceeding.

Affirmed.

Mr. Justice Roger L. Dell, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.