IN RE PETITION OF HENRY E. LIPPMANN AND OTHERS
FOR ESTABLISHMENT AND CONSTRUCTION OF
LATERAL A TO JUDICIAL DITCH NO. 13
OF SIBLEY, RENVILLE, AND
NICOLLET COUNTIES.
JOSEPH HUHN, APPELLANT.
IN RE PETITION FOR DRAINAGE OUTLET OF LATERAL A
INTO JUDICIAL DITCH NO. 13.
JOHN HERSCHMANN AND OTHERS, APPELLANTS.

81 N. W. (2d) 100.

February 8, 1957—Nos. 36,822, 36,823.

*Young & Kunz,* for appellants.
*Einar A. Rogstad* and *Berens & Rodenberg,* for respondents.

NELSON, JUDGE.

Appeals from an order of the district court establishing Lateral A to Judicial Ditch No. 13 of the counties of Sibley, Renville, and

Nicollet, Minnesota, and from an order establishing said Judicial Ditch No. 13 as an outlet for said Lateral A and determining the amount to be paid therefor. Said appeals were, pursuant to stipulation, consolidated for hearing and argument before this court.

The petition for the establishment of Judicial Ditch No. 13 was filed on April 28, 1950. That petition asked for the construction of a main ditch and two laterals numbered 1 and 2. Later branches 3 and 4 were added. The final order establishing Judicial Ditch No. 13 was filed February 5, 1952.

The petition for the establishment of Lateral A was filed January 11, 1954, and the final order establishing Lateral A on October 25, 1955.

A petition was filed June 3, 1955, asking for permission to outlet Lateral A into Branch 4 of Judicial Ditch No. 13 and an order permitting Lateral A to outlet into said Branch 4 was made October 25, 1955.

Appellants assign error in granting the outlet into Judicial Ditch No. 13 in the following respects:

"1. Trial court erred in making finding paragraph one that Judicial Ditch No. 13 is of sufficient capacity to serve as an outlet for said lateral.

"2. Trial court erred in making finding paragraph two that the amount to be paid for said outlet by said lateral is $2,000.00."

There are several separate assignments of error as to the order establishing Lateral A. These in the main include error by the trial court in finding Lateral A practicable and that the estimated benefits to be derived from the construction of the lateral are greater than the total cost, including damages awarded; in finding that said improvement will be of public utility and promote the public health; in establishing lateral through an earthen barrier diverting water away from a natural waterway to the injury of landowners who have a property right in an already established ditch where it conclusively appears that the most reasonable course for drainage was along the natural waterway; in failing to consider damages that would result from additional watershed being drained by an already

overburdened ditch system; and in failing to consider the rights of landowners in a ditch for which they have been assessed benefits and which they have a right to have maintained in the same condition as originally established.

The area served by Judicial Ditch No. 13 lies within a watershed that extends generally in a southwesterly direction from its starting point and outlets into a natural channel or creek. The ditch is six miles in length, commencing in the northeast corner of sec. 30, T. 112, R. 31, Sibley County, Minnesota, and running westerly, southwesterly, and southerly near the township line between Ridgely and West Newton Township in Nicollet County. It outlets into a watercourse near the NE 1/4 of sec. 13 in Ridgely Township in Nicollet County. This watercourse continues in a southerly direction for a short distance and finds its outlet in the Minnesota River.

Appellants argue that proposed Lateral A will drain a watershed area separate from the area served by Judicial Ditch No. 13; that the two watersheds are separated by a natural ridge or earth barrier of high land. Judicial Ditch No. 13 and the natural waterway carrying the water from respondents' watershed area to the east run approximately parallel for a distance of something more than one mile. Appellants suggest that it is important to note that the lands of the two watersheds slope rather sharply to the south; that the water running off respondents' land over a period of many years has formed natural creeks or watercourses in the easterly watershed area as was the situation in the area served by Judicial Ditch No. 13; and that the two watercourses come together as stated near the NE 1/4 of sec. 13 in Ridgely Township.

The main concern of overburdening an established ditch system centers on Branches 3 and 4 of Judicial Ditch No. 13. Branch 3 joins the main ditch near the Nicollet County line, running northeasterly about one mile to a point where Branch 4 takes off southeasterly for approximately one mile, nearing at the latter point the watershed of respondents' proposed drainage area to the southeast of the watershed area of said Judicial Ditch No. 13.

Lateral A was designed to serve a portion of the area southeast of the near east extremity of Branch 4, and it is this area which appellants point out lies outside of the watershed area of Branch 4 of Judicial Ditch No. 13. They claim that the whole area slopes to the south and southwest, the surface waters thereof flowing into its own natural channel or waterway southwesterly until it reaches a creek or watercourse near the outlet of Judicial Ditch. No. 13. Appellants argue that this natural channel or waterway has been improved by the landowners in the area from time to time, to the extent, that private ditches have been substituted for a portion of the creek; that situated at or near the east line of sec. 6 is a substantial body of water of about 100 acres which does not dry out in normal years; and that this slough or ponded area is quite well embanked so that the water that congregates therein does not easily spill out. They further claim that to the south and southwesterly along the route which has been referred to as the natural channel in respondents' area may be found an additional acreage of about 500 acres which will drain through the proposed Lateral A and that the proposal will divert the water flowing through the natural channel to the north and leave approximately the southerly half of the watershed area to be drained through the remaining portion of the natural channel as it has been improved in the past by the landowners.

Appellants complain that none of the lands in the area proposed to be drained by Lateral A were assessed benefits into Judicial Ditch No. 13; that Lateral A as petitioned for will carry the water westerly, northerly, and northwesterly, instead of southerly and southwesterly along and through the natural channel provided in that area.

The record indicates that the proposed Lateral A is 8,000 feet in length with a branch 3,600 feet in length; that 4,800 feet of the proposed lateral is open ditch cutting through the watershed between the two areas and the balance of the main ditch is tile.

Other points raised by appellants are that both the open ditch and the tile branch of Lateral A are designed with an insufficient grade; that the ditch which has to be cut through the barrier between the

two watersheds is designed at a depth of 16.8 feet while there is a foot of fill in the bottom of Branch 4 at the proposed outlet for the lateral, and the proposed lateral is designed to be 6½ feet only in depth at the outlet; that Branch 4 into which the proposed lateral outlets was 6½ feet in depth at the point of outlet, originally, but now due to a foot of fill is only 5½ feet in depth; that Branch 4 was designed and constructed at no more than a .02 grade; that from the point of the proposed outlet, Branch 4 turns and goes north for a distance of about 400 feet, where the construction ends, where if Branch 4 had been constructed to meet the present plans a .6 grade could have been accomplished in the area to the north which indicates a rather rapid rise in the drainage area to the north and northeast.

Appellants call attention to written objections opposing the use of Judicial Ditch No. 13 as an outlet for Lateral A filed by all of the landowners interested in Judicial Ditch No. 13 with only one or two exceptions.[1] They contend that the respondents occupy an entirely separate watershed area which they now seek to drain through the barrier separating the two watersheds and to outlet into Judicial Ditch No. 13 for the sole purpose of serving the convenience of landowners on Lateral A while there exists a natural channel or waterway, in the watershed area of respondents, the improvement of which would provide them with a practical, feasible, and logical means for drainage and would avoid taxing the carrying capacity of Judicial Ditch No. 13.

Respondents question the right of appellants to take an appeal from the order establishing the outlet, suggesting that certiorari is

[1]See M. S. A. 106.021, subd. 1, entitled "POWERS OF COUNTY BOARDS AND OF DISTRICT COURTS," which provides:

"The county boards of the several counties, and the district courts are authorized to make all necessary orders for and cause to be constructed and maintained public drainage systems; to deepen, widen, straighten, or change the channel or bed of any waterway following the general direction thereof, and when practical, terminating therein; to extend the same into or through any municipality for the purpose of securing a suitable outlet; and to construct all needed dikes, dams, and control works and power appliances, pumps, and pumping machinery."

the correct and only available method by which this order may be reviewed. The issue was not before the lower court. The appellants take the position that the orders herein should be vacated and the petitions dismissed. Respondents assert that there is no provision for appeal from an order finding a petition sufficient and suggest that, if there is not, then certiorari must be the correct and only available method of review.

■ The order appealed from herein establishing the outlet, with its provision for payment according to statutory requirements, constitutes a final order, as does the order establishing Lateral A. An order simply finding a petition sufficient does not constitute a final order. It is only one of the steps in initiating a ditch proceeding and therefore is not ordinarily a final order in the respect that it presents anything for review at that stage of the proceedings. Since there has been a consolidation of the two appeals, the two final orders must necessarily be considered together in the establishment of Lateral A, which of necessity must have an outlet to complete the improvement.

M. S. A. 106.631, subd. 5, entitled "Appeal to supreme court," provides that "Any party aggrieved by a final order or judgment rendered on appeal to the district court, or by the order made in any judicial ditch proceeding dismissing the petition therefor or * * * refusing to establish any judicial ditch, may appeal therefrom to the supreme court in the manner provided in civil actions."[2]

Section 106.521 of the drainage act provides how persons owning property in the vicinity of an existing public drainage system may petition for a lateral or a lateral system connecting such lands with the existing drainage system.

Section 106.531, supplementary to § 106.521, provides how drainage systems may be put to use as outlets.[3]

[2]See, § 106.631, subd. 6. The Commission note which follows subd. 6 in 9 M. S. A. 1956 Cumulative Annual Pocket Part, p. 92, reads: "Section 63 combines the provisions of Sections 106.89, 106.90, 107.17, and 108.25. It is specifically provided that all orders of the district court shall be reviewable by appeal."

[3]The Commission note which follows § 106.531 in 9 M. S. A. 1956 Cumulative Annual Pocket Part, p. 85, reads: "Section 53 is taken from Section

8

Respondents argue that appellants cannot, either in reliance upon their quoted statement of facts or upon their assertion of resulting legal issues, successfully challenge the orders of the trial court or respondents' right to proceed as they did under the drainage act as amended to submit the issues, here involved, as fact issues, for determination by the trial court. The record also discloses that, while the proceedings to establish Judicial Ditch No. 13 were in progress, the same engineer who designed the present project took into consideration that someday the wet area described in the present proceedings would be drained into Judicial Ditch No. 13. He also testified that Branch 4 of Judicial Ditch No. 13 proposed for the outlet of Lateral A is large enough to take the water from said lateral; that the outlet is adequate; and also that Lateral A is necessary because "a lot of slough, wet and overflowed lands" will be drained and reclaimed by this general project; that ditches and culverts in the area of said ditch No. 13 were intentionally designed to meet conditions should the area of the so-called respondents' watershed become a part of said ditch system by permitting a lateral, or laterals, if petitioned for by respondents, to outlet therein.

The testimony of appellants' engineer suggests that he does not like the gradient used, but he does state that he has used it and also states that he has planned another ditch to cover the same area, but his testimony does not follow up on cost, practicability, or feasibility of the project. There was no testimony offered in opposition to the amount fixed in the order permitting the outlet of Lateral A into Branch 4 of said Judicial Ditch No. 13.

Appellants' engineer admits that the culverts are comparable with the area as now proposed by the present project. There was testimony that there had been overflow near the outlet for Lateral A in the past, but it also appears from the testimony of one of the objectors that this may have occurred at a time when there had been a

106.55. For the purpose of protecting other parties interested, a hearing has been provided on notice by publication. It is provided that the lands affected shall be liable for future assessments the same as lands originally included." An amendment by L. 1955, c. 800, § 4, requires mailed notice in addition to notice by publication.

rainfall of from 7 to 8 inches resulting from two showers. This amount of rainfall coming as the testimony indicates of course is unusual and could well overflow any ordinary ditch which would otherwise fully serve an area in times of normal rainfall.

It is apparent from an examination of the plats and profiles of Judicial Ditch No. 13 that a goodly portion of Branch 4 of Judicial Ditch No. 13 runs in a northeasterly direction.

The engineer, Mr. Chamberlain, testifying in the present proceedings as the engineer for respondents, said of the survey made preparatory to the establishment of Judicial Ditch No. 13: "In our survey we platted this area and there designed or considered they some day might want to drain this area into Judicial 13 because it is so near to Judicial 13."

It may be helpful here to note that he testified further as follows:

"Q. At the time you designed Judicial Ditch No. 13, did you take into consideration that at some future date possibly the owners of land in this area might petition for an outlet into Branch 4?

\*     \*     \*     \*     \*

"A. Yes. In the design of Branch 4 and branches of Judicial 13 of the main ditch, I considered that they might some day want to drain this slough into Judicial 13 and the culverts were made large enough to carry this watershed.

"Q. What was the size of the culverts on branch—what size did you determine to be sufficient to drain this area on Branch 4?

"A. We used a minimum size of 48-inch culvert and this watershed is below the minimum and there isn't enough water there in the watershed to make runoff enough to fill the 48 under normal conditions. And then when we come to the junction of Lateral 4 and 3 below that point we put in a 60-inch culvert. If we hadn't thought that this area might some day come in, we would have used a 54-inch culvert so that the culvert and the ditch are large enough to drain this area.

\*     \*     \*     \*     \*

"Q. The outlet, then, is adequate, in your opinion?

"A. Yes.

"Q. Is there a necessity for this lateral?

"A. Yes, I think so.

"Q. Why is it necessary?

"A. There is a lot of slough, wet and overflowed lands which would be drained and claimed by the proposed project.

"Q. Well, is it practical?

"A. Yes.

"Q. What would you say—why is it practical?

"A. Well, the benefits are greater than the estimated costs and the ditch will be located so it could be put to practical use by the owners of the lands that will pay for it.

\* \* \* \* \*

"Q. Would this promote the general health and the public welfare?

"A. I think so.

"Q. Would you say that the outlet then is adequate?

"A. That is my opinion.

\* \* \* \* \*

"Q. Is this lateral, this proposed lateral in the vicinity of an existing public drainage system?

"A. Yes."

One of the viewers likewise testified that the project is practical, feasible, and will promote the public health.

Appellants argue that, since this new ditch comes in from a separate watershed lying outside of the area of Judicial Ditch No. 13, the proposed improvement does not fit the definition of a "lateral" as referred to in our statutes and as defined by the courts. They say, the proposed improvement constitutes an entirely separate ditch or drainage system and thus it cannot be construed to be a lateral. They cite In re Petition for County Ditch No. 53, Chippewa County, 238 Minn. 392, 398, 57 N. W. (2d) 158, 162, where this court said: "We recently had occasion to consider the meaning of the word 'lateral' in In re Petition re Judicial Ditch No. 7, 238 Minn. 165, 56 N. W. (2d) 435." Mr. Justice Knutson speaking for the court in

the Chippewa County case made the following observation (238 Minn. 398, 57 N. W. [2d] 162) :

"It is obvious that those interested in the construction of ditch No. 53 are in need of drainage. The trial court has so found. Under our present code there is no way in which they can institute proceedings to enlarge ditch No. 22 so that it will have a sufficient capacity to handle the water which would be drained into it if ditch No. 53 were constructed. Nor can it be constructed without regard to the damage it will cause to those landowners adjacent to ditch No. 22. However true this may be, it presents a problem the solution of which lies with the legislature and not with the courts, even though the result may be unfortunate to those desiring relief which could be afforded by the construction of ditch No. 53."

Section 106.521, entitled "Laterals," was then amended by L. 1953, c. 531, approved April 21, 1953. Section 106.531, relative to use of a drainage system as an outlet, was amended by L. 1953, c. 530, approved April 21, 1953. Section 106.531 was again amended by L. 1955, c. 800, § 4, to require mailed notice of hearing in addition to notice by publication. Section 106.011 was also amended by L. 1953, c. 407, approved April 17, 1953, by adding thereto subd. 22, which reads as follows:

" 'Lateral' or 'lateral system' means any construction either by branch, lateral or upstream extension or branches or laterals thereof required to connect lands with an established ditch."

Section 106.021, subd. 1, heretofore referred to, contains the initiatory provisions in the matter of granting powers to county boards and the district courts in establishing, constructing, and maintaining public drainage systems. Preceded by the title "Generally," it provides what the termination of the system shall be when practical. This subdivision, however, only confers jurisdiction in general terms. The proceedings herein are initiated under §§ 106.521 and 106.531, as now amended, statutory provisions within the drainage code in effect supplementary to each other, which must be construed together to effect the practical purposes for which they were enacted.

■ Section 106.521 requires that, where land traversed reaches into more than one county, 26 percent of the resident owners or owners of 26 percent of the traversed property shall sign as petitioners. The petition must describe in general terms the starting point of the lateral, general course and terminus, together with lands traversed thereby. It must set forth the necessity for the construction of the improvement and that the same, if constructed, will be of public benefit and utility and promote the public health. Prayer that lateral be constructed and connected with said established ditch must follow. After giving bond under § 106.041, proceedings shall be had and carried to final determination under the provisions of the drainage code in the same manner as original proceedings for a ditch system. It is further provided that no lateral or lateral system shall be constructed for the drainage of lands not assessed benefits for such existing public drainage system until express authority for the use of the existing system as an outlet for such lateral or lateral system has been granted pursuant to proceedings under § 106.531.

Section 106.531 provides for use of an established drainage system as outlet but with certain limitations. No public or private ditch or ditch system, either open or tiled, may obtain an outlet into any county or judicial ditch for drainage of land not assessed for benefits for such ditch without first having secured express authority from the proper tribunal which originally ordered the construction. This must be a hearing at which the capacity of the outlet ditch will be considered. If consent is given for construction of proposed lateral or lateral system and outlet into an established ditch, the order shall fix the terms and conditions for use of the established ditch as an outlet and the amount that shall be paid for the right to outlet.

It is also provided by the 1953 amendment of this section (L. 1953, c. 530) that "The amount so fixed for an outlet charge for any proposed public ditch or ditch system shall be deemed a part of the cost of such proposed ditch or ditch system to be paid by assessment against the lands and properties benefited by the proposed ditch or ditch system, as provided by section 106.341, and credited to the fund of the existing ditch." Section 106.531 also provides that the order

fixing the terms and conditions imposed by reason of consenting to the outlet shall "describe the property to be benefited by the ditch or ditch system and shall fix the amount of benefits to such property for the outlet." The property so benefited "shall be liable for assessments thereafter levied in such ditch system, on the basis of the benefits so found, the same as though such benefits had been determined in the original order establishing the ditch."

It is evident from the amendments herein mentioned that the legislature became cognizant of the problems presented by the Chippewa County case, *supra,* recognizing that certain problems therein referred to were matters for the legislature to solve and not for the courts. Amendments followed promptly during the 1953 session. This immediate legislative response is indicative of the intention of the legislature, in adopting the new and revised drainage act, §§ 106.011 to 106.661, including the amendments of the 1953 and 1955 legislative sessions, to make the provisions of the drainage act practical and workable whenever statutory grounds for relief exist and to have its several provisions construed in accordance with the general purpose and tenor of the drainage code in effecting practical solutions of future drainage problems.

It has been ruled that the establishment of laterals into drainage ditches is not authorized under petition for repair proceedings, but is permitted only in a proceeding for improvement of outlet into an established ditch, and for establishment of a lateral or laterals into such ditches, such proceedings being statutory. In re Judicial Ditch No. 7, Martin and Faribault Counties, 238 Minn. 165, 56 N. W. (2d) 435, 57 N. W. (2d) 29; In re Petition for Repair of County Ditch No. 1, Faribault County, 237 Minn. 358, 55 N. W. (2d) 308.[4]

Appellants cite as controlling cases In re Petition for County Ditch No. 53, Chippewa County, *supra;* Lupkes v. Town of Clifton, 157 Minn. 493, 196 N. W. 666; Erhard v. Wagner, 104 Minn. 258,

---

[4]See, § 106.511; § 106.201, subd. 2, as to how and upon what conditions a drainage system, when all proceedings are in order as by a statute provided, may be established giving due regard to the engineer's and viewers' reports.

116 N. W. 577; Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632.

We have heretofore discussed the Chippewa County case and the legislative changes which followed in 1953, as to a lateral, what constitutes a lateral, and the use of established drainage systems as an outlet. The other cases which appellants rely on may be readily distinguished from the factors that confront the court in the present situation under the statutory authority of §§ 106.521 and 106.531 as now amended when read in connection with the other provisions of c. 106. The questions which have arisen in these proceedings cannot be solved by applying to the admitted facts the law as to surface waters and private drains. We proceed here under the new drainage act enacted in 1947 (L. 1947, c. 143) and as later amended in 1953 and in 1955. As was said by Mr. Chief Justice Start, speaking for the court in State ex rel. Wait v. Baxter, 104 Minn. 364, 365, 116 N. W. 646:

"* * * The very purpose of the law providing for the establishment of public ditches is to secure the drainage of large areas of land, which otherwise could not be drained, owing to the conflicting interests of private parties and the necessity in many cases of diverting waters from their natural courses. The statute authorizing public ditches is based upon the fact that some landowners will be benefited by the establishment of such a ditch and others injured by the diversion of waters from their natural bed; hence it provides for the exercise of the power of eminent domain, the payment of damages, and the assessment for benefits."

In Bilsborrow v. Pierce, 112 Minn. 336, 340, 128 N. W. 16, 18, 299, Mr. Chief Justice Start again said:

"The mere fact that the construction of the ditch would necessitate the cutting through a ridge to the depth of nine feet, and thereby the water would be diverted from its natural course to the great damage of the plaintiffs, for which they would have no adequate remedy at law, would not necessarily be a reason for enjoining its construction by the defendants; but they must secure the right so

to do by the exercise of the power of eminent domain and the payment of damages," citing Nye v. Kahlow, 98 Minn. 81, 107 N. W. 733; State ex rel. Wickstrom v. Board of Co. Commrs. 98 Minn. 89, 107 N. W. 730; State ex rel. Wait v. Baxter, *supra*. -

■ The evidence in the instant proceedings refers to cutting through a ridge to the depth of 16.8 feet in the construction of the proposed lateral. We believe the respondents herein have proceeded as required in the matter and have pursuant to statutory authority and in compliance therein obtained the lawful right to do so, as well as the statutory and legal right to construct lateral A and to obtain the consent to outlet into Judicial Ditch No. 13.

This court had occasion in the Wait case to consider L. 1905, c. 230, § 1, which provided in the matter of the construction of public ditches "that when in any such proceedings the waters of any creek, river or other water course are diverted from their natural bed by such artificial ditch or drain, such ditch or drain shall as nearly as practicable follow the general direction of such creek, river or water course, and terminate therein." This proviso, it was there held, conferred jurisdiction in general terms, as does the present § 106.021, in defining the powers of county boards and of district courts in the construction and maintenance of public drainage systems. It was contended in the Wait case that the above proviso operated as an absolute prohibition of the diversion of waters from a natural water course, unless the waters again return to such course, and that the ditch must terminate therein in all cases. The court in analyzing this contention said that (104 Minn. 366, 116 N. W. 647):

"* * * If this be the correct construction of the proviso, then the district court has no jurisdiction to establish the ditch in question; for it is admitted that the ditch, if constructed, would divert waters from their natural course, and that it does not terminate therein. Such a construction, however, would be a serious limitation upon the power to establish public ditches whenever public health and utility required it; for then there could be no diversion of waters, unless the ditch terminated in the course from

which the waters were diverted, whether it was practicable so to do or not. This construction practically emasculates the grant of power to establish public ditches, and it cannot be accepted unless it is obvious that such was the legislative intention. A mere reading of the proviso, in connection with the grant of power, indicates the sense in which the legislature used the phrase 'shall as nearly as practicable follow the general direction of such creek, river or watercourse, and terminate therein.' It means that the ditch shall follow the general direction of such creek, river or watercourse, and terminate therein, so far as may be practicable. The provisions of our ditch laws must be liberally construed, so as to promote the public health and the drainage and reclamation of wet or overflowed land."

■ We have fully considered the testimony submitted by both sides as well as the maps and exhibits. The evidence is clearly in conflict on the fact issues. All findings of fact find support in the evidence. We have in examining the lateral and outlet statutes given careful consideration to the legislative purpose and intent in enacting the recent amendments to these statutes both when construed together, as they must be, and when read with other provisions of our present drainage code. The authorities cited by both sides have not been overlooked. We come to the conclusion that the findings of fact and the legal conclusions of the trial court have support in the evidence, the law, and present provisions of our drainage code.

Where parties proceed to trial without a jury, conflicts in the evidence present fact issues for determination by the trial court and its findings thereon will not be disturbed upon appeal unless they are manifestly and palpably contrary to the evidence. This court must therefore view the evidence herein in the light most favorable to the findings. Enderson v. Kelehan, 226 Minn. 163, 32 N. W. (2d) 286; 1 Dunnell, Dig. (3 ed.) § 411.

The orders appealed from are accordingly affirmed.

Affirmed.