## IN RE PETITION OF LYNN BALBACH AND OTHERS v. CLARENCE L. MOE.

200 N. W. 2d 901.

August 25, 1972—No. 42373.

*Somsen & Dempsey* and *Henry N. Somsen, Jr.,* for appellant. *Everett L. Young,* for respondents.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Todd, JJ.

ROGOSHESKE, JUSTICE.

Clarence L. Moe appeals from an order of the district court affirming an order of the Board of County Commissioners of Brown County establishing County Ditch No. 69. The ditch as approved will divert the runoff of surface waters from some of

the watershed acreage of meandered Boise Lake. While such a diversion could effect drainage of a meandered lake within the contemplation of Minn. St. 106.021, subd. 2, approval by the commissioner of natural resources is not required in this case, as the record establishes that, in light of the total watershed of Boise Lake, the acreage affected was minimal and it was not shown that the runoff of surface waters from the remaining watershed acreage was insufficient to maintain the lake level. Therefore, the trial court's conclusion that County Ditch No. 69 will have no appreciable effect on the level of Boise Lake is not clearly erroneous. Accordingly, we affirm.

Pursuant to § 106.031, a petition for the establishment of County Ditch No. 69 was filed with the Brown County board by respondent Lynn Balbach and others. The purpose of the ditch was to reclaim land by draining two sloughs, referred to as the Potter and Arndt Sloughs, which are located in Burnstown Township, Brown County, and are within the watershed area of Boise Lake. Boise Lake is a meandered lake of 162 acres used by the public for fishing, boating, and water skiing. It is located approximately $1\frac{3}{4}$ miles east of the more easterly of the two sloughs.

During the proceedings and prior to the hearing before the county board, alternate proposals for draining the sloughs were made. One proposal would have drained the sloughs into a natural watercourse or old "bull" ditch, which ran easterly and emptied into Boise Lake. The other proposal, referred to as Alternate No. 2, would drain the two sloughs southerly into the Cottonwood River. Following the procedures required by c. 106, the county board issued its order on March 16, 1967, establishing Alternate No. 2 as County Ditch No. 69.

Clarence Moe appealed to the district court, as authorized by § 106.631, subd. 4.[1] After a trial de novo without a jury, the

---

[1] Minn. St. 106.631, subd. 4, provides in part: "Any party aggrieved thereby may appeal to the district court of the county where the proceedings are pending from any order made by the county board dismiss-

district court affirmed the order of the county board as lawful and reasonable. The court, in the memorandum accompanying its order, stated that "the ditch will have only speculative and at most an insignificant effect on the level of the lake" and that "there is no suggestion, even by the appellants, that the construction of the ditch as proposed [Alternate No. 2] would drain Boise Lake, and * * * the testimony raises some doubt that the level of the lake would be lowered to any appreciable extent."

Because of the fact issues in dispute, we would have been greatly assisted by more extensive findings by the trial court even though the court found the action of the board reasonable and lawful, which is albeit the only finding required by § 106.631, subd. 4, if the court approves the board's action. For purposes of this appeal, we consider the district court's conclusions in the memorandum accompanying its order as incorporating and adopting the county board's findings and in particular the finding that the drainage of surface waters from the watershed area of the ditch "will not affect the water level of said lake." [2]

The appellant's primary contention on appeal is that the diversion of surface runoff will have the same effect on the water level of Boise Lake as establishing a drainage outlet for the lake

---

ing the petition for any drainage system or establishing or refusing to establish any drainage system. * * * [I]t may be brought on for trial by either party upon ten days notice to the other, and shall then be tried by the court without a jury. The court shall examine the whole matter and receive evidence to determine whether the findings made by the county board can be sustained. At such trial the findings made by the county board shall be prima facie evidence of the matters therein stated, and the order of the county board shall be deemed prima facie reasonable. If the court shall find that the order appealed from is lawful and reasonable, it shall be affirmed. If the court finds that the order appealed from is arbitrary, unlawful, or not supported by the evidence, it shall make such order to take the place of the order appealed from as is justified by the record before it or remand such matter to the county board for further proceeding before the board."

[2] The county board also found that County Ditch No. 69 [Alternate No. 2] will be of public utility and will promote public health.

itself, and thus the county board's order was unlawful because the commissioner of natural resources had not determined that Boise Lake is not public waters and had not issued a permit as required by § 106.021, subd. 2.[3] Whether diversion of surface waters normally contributing to a lake's water level can be a "draining" subject to the proscription of § 106.021, subd. 2, appears to be an issue of first impression.[4] In view of the policies behind our numerous statutes establishing a systematic administration of public waters for the public welfare and in view of the common usage of the word "drain," we have no hesitancy in concluding that the legislature intended that the draining of a meandered lake within the contemplation of § 106.021, subd. 2, does not consist solely of emptying already collected water from the lake but also includes, upon proper proof of effect on the lake's water level, the diversion of surface runoff from the watershed area of the lake.[5]

---

[3] Section 106.021, subd. 2, provides: "The board or court is authorized to drain in whole or in part lakes which have become normally shallow and of a marshy character and are not of sufficient depth or volume to be of any substantial public use; provided no meandered lake shall be so drained except upon the determination of the commissioner of natural resources of the state of Minnesota that such lake is not public waters, or pursuant to the permit of the commissioner as provided in subdivision 3."

[4] But see, In re Petition of Stevens, 291 Minn. 263, 190 N. W. 2d 482 (1971).

[5] Minnesota statutes regulating water protection, use, and disposition must be "considered as a whole to effect a systematic administration of water policy for the public welfare." Minn. St. 105.72. Minnesota has the policy "to promote the retention and conservation of all water precipitated from the atmosphere in the areas where it falls," § 111.82, and in establishing drainage systems, due consideration must be given to conservation interests. § 106.671. Because of the explicit statutory preference that the state's interest should be protected in projects involving public waters, any ambiguity in the word "drain" in § 106.021, subd. 2, must be resolved so as to promote the consideration of the public interest in the conservation of natural resources. We have indicated that the necessity for the commissioner's authorization under

The critical issue before the board and the district court was whether the diversion of the surface waters from the sloughs and adjoining acreage was sufficiently extensive to effect a lowering of the lake level so as to constitute a drainage of the lake within the contemplation of § 106.021, subd. 2. On appeal, the dispositive issue before this court is whether the court's conclusions, incorporating the board's findings, that the diversion will not have any appreciable effect on the water level of Boise Lake is clearly erroneous. Rule 52.01, Rules of Civil Procedure.[6] Upon a careful reading of the record we are not persuaded that the conclusions of the district court are clearly erroneous. The watershed area of Boise Lake is comprised of about 2,000 acres. The appellant's proof on the critical issue, consisting mainly of the testimony of an expert, went to show that the county board's adoption of Alternate No. 2 would divert the runoff of 886 acres, including the 667 acres of the two sloughs, or over 44 percent of the total watershed. However, the evidence in its entirety es-

---

§ 106.021, subd. 3, for draining of a lake does not necessarily depend on the project involved but depends on the project's effect on the lake's water level. See, In re Petition of Jacobson re County Ditch No. 24, 234 Minn. 296, 48 N. W. 2d 441 (1951). And, ordinarily, the mode or means of diverting waters does not affect the determination of whether the project is reasonable or lawful. 56 Am. Jur., Waters, § 353.

Furthermore, we are to construe words according to their common and approved usage, Minn. St. 645.08(1), and "drain" is defined as "something that causes depletions" or, as a verb, "to cause the gradual disappearance or extinction of" the water. Webster's Third New International Dictionary (1961) p. 685. "Drain" includes then, in its larger sense, not only providing outlets and channels for relieving land of water, but also establishing a ditch which prevents the natural accumulation of water contributing to the maintenance of a lake's water level. See, Pioneer Real Estate Co. v. City of Portland, 119 Ore. 1, 12, 247 P. 319, 323 (1926); Holt v. State, 176 S. W. 743, 746 (Tex. Civ. App. 1915).

[6] See Minneapolis Van & Whse. Co. v. St. Paul Terminal Whse. Co. 288 Minn. 294, 180 N. W. 2d 175 (1970), and State, by Head, v. Paulson, 290 Minn. 371, 188 N. W. 2d 424 (1971), for a discussion of our scope of review under the "clearly erroneous" language of Rule 52.01, Rules of Civil Procedure.

tablishes that, even though the two sloughs are within the lake's watershed, they did not drain into the lake except in those periods of unusually heavy precipitation and high waters when their overflow would rise above a ridge running north and south just east of the more easterly slough and would drain to the lake along the old bull ditch. Thus, as a practical matter, only 219 acres of the approximately 1,333 acres of watershed that consistently contributed runoff to the lake would be diverted.

Significantly, and as noted by the trial court, the appellant's expert witness did not state that Alternate No. 2 will drain Boise Lake but expressed the opinion that the permanent eradication of the sloughs from the watershed would have a very detrimental effect on the lake in that it would not refill as quickly if its water level lowered during a prolonged dry spell. But weighing the expert's testimony of this type of effect against the evidence with respect to average yearly rainfall, contribution of runoff per acre of watershed, and the yearly evaporation of water from the lake, it is understandable why the trial court was persuaded that the minimal diversion of runoff of 219 watershed acres would not appreciably affect the level of the lake since sufficient watershed area remained to maintain the lake's level. This, in conjunction with appellant's failure to demonstrate that draining the sloughs into Boise Lake according to the proposal favored by him would not overflow the lake and adjoining farmlands in periods of heavy rainfall unless a proper outlet from the lake was constructed, gives sufficient evidentiary support to both the board's and the court's findings and conclusions.

Affirmed.

MR. JUSTICE KELLY took no part in the consideration or decision of this case.