IN RE PETITION OF HENRY E. SCHWERMANN AND OTHERS FOR ESTABLISHMENT OF COUNTY DITCH NO. 93, NICOLLET COUNTY, v. OSCAR REINHART AND OTHERS.

210 N. W. 2d 33.

June 15, 1973—No. 43806.

---

*Everett L. Young, Gislason, Alsop, Dosland & Hunter,* and *James H. Malecki,* for appellants.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, *C. Paul Faraci,* Deputy Attorney General, *William G. Peterson,* Special Assistant Attorney General, and *A. R. Mueller,* for respondents.

Heard before Knutson, C. J., and Peterson, Todd, and Mac-Laughlin, JJ.

TODD, JUSTICE.

Petitioners sought the establishment of a drainage ditch in Nicollet County. The county board ordered the establishment of the ditch, but upon objectors' appeal to the district court, the proceedings were dismissed. We reverse and remand.

A petition to establish a drainage ditch was properly filed with the county board pursuant to Minn. St. c. 106. The county board, pursuant to the provisions thereof, proceeded to order the estab-

lishment of the ditch and assigned to the proceeding the title County Ditch No. 93. This ditch would drain approximately 2,700 acres within the county. Included in this acreage were over 100 acres of so-called marshland which provided habitat and nesting areas for wild ducks. The loss of this area would result in an annual loss of wild duck production of approximately 500 ducks, though the evidence was conflicting on this claim, since Swan Lake, a large meandered lake, lies within one-half mile of the project area. The outlet of the drainage system was the Minnesota River, and the drainage of the 4-mile ditch would be added to the total flow of the river at the point of discharge. The evidence further disclosed that some 30,000 acres of tillable land in Nicollet County had been removed from production under the Federal crop-stabilization program. Of this amount 1,652 acres were located within the township where the ditch was to be constructed, and 312.9 acres lay within the 2,700-acre watershed of County Ditch No. 93. In the drainage area about 470 acres naturally drain to the proposed outlet of the ditch and its construction would increase the rate of flow in the present natural drainage area. In the memorandum accompanying its order of dismissal, the trial court said:

"* * * To proceed by a public, statutory proceeding, Petitioners must show requisite public benefit and utility. The Court considered the specific interests of the petitioning landowners, and of the public in this locale in their prosperity, as measured against other public interests embodied in State and Federal programs and put forward with equal force by Appellants who oppose the ditch. It is illustrative of the divided thinking and changing attitudes on this matter that, within the watershed of this ditch, conventional views (heretofore dominant) of farmers favoring drainage are opposed by those of other landowners, equally concerned, favoring wild-life preservation, waterfowl production and conservation of soil resources. Consideration of all relevant factors, as required by statute, led this Court to conclude the ditch should not proceed."

The court in its findings of fact upon which the order of dismissal was based found that the construction plan as amended was a practical and feasible way of controlling flow from the watershed; that the benefits would exceed the expenses, including damages; and that the project resulted in a public benefit within the meaning of the statute. The trial court further found that insufficient evidence was presented to permit a determination as to whether or not the proposed ditch would promote public health and that the viewers had failed to consider damages for riparian owners along a ravine in the natural flow area by reason of residual erosion and of possible flooding caused by impoundment of water above a dam in the event of heavy rainfall.

In addition, the court found that the marshy areas and sloughs were a significant part of the wildlife-production areas of Nicollet County; that the addition of tillable land in Nicollet County was irreconcilable with the Federally financed, crop-stabilization program; and that a large part of the drainage area would be added to the flow of the Minnesota River. Considering all of these factors, the trial court found that the proposed ditch would be of no public benefit or utility.

1. Petitioners challenge the authority of the trial court to enter the order it did in the light of the provisions of Minn. St. 106.631, subd. 4, which provides in part:

"* * * Upon such appeal being perfected, it may be brought on for trial by either party upon ten days notice to the other, and shall then be tried by the court without a jury. The court shall examine the whole matter and receive evidence to determine whether the findings made by the county board can be sustained. At such trial the findings made by the county board shall be prima facie evidence of the matters therein stated, and the order of the county board shall be deemed prima facie reasonable. If the court shall find that the order appealed from is lawful and reasonable, it shall be affirmed. If the court finds that the order appealed from is arbitrary, unlawful, or not supported by the

evidence, it shall make such order to take the place of the order appealed from as is justified by the record before it or remand such matter to the county board for further proceeding before the board."

This section became part of our drainage laws by amendment under L. 1949, c. 357, § 1. We had occasion to consider the scope of review under this section in In re Petition for County Ditch No. 53, 238 Minn. 392, 57 N. W. 2d 158 (1953). In that case, our court, speaking through Mr. Justice (now Chief Justice) Knutson, carefully reviewed the history of our drainage laws and concluded (238 Minn. 402, 57 N. W. 2d 164):

"* * * We there held [Stronge & Lightner Co. v. Commr. of Taxation, 228 Minn. 182, 36 N. W. 2d 800 (1949)] that the effect of a trial *de novo* on appeal from the order of the commissioner of taxation which was prima facie valid simply placed the burden of introducing evidence to overcome the prima facie status of the order on the taxpayer. We believe that the same is true here. The statute provides that the court shall examine the whole matter and receive evidence to determine whether the findings made by the county board can be sustained, and, if it finds that the order appealed from is not supported by the evidence, it shall make such order to take the place of the order appealed from as is justified by the record before it. It would seem that the language of the statute can only mean that, when the appellants in a case such as this proceed with the introduction of evidence, the trial is for all intents and purposes *de novo* as it was under the old statute and that the court thereupon can make such findings governing the whole case as may be necessary."

We have consistently followed this holding, with one exception discussed hereafter, and as recently as in Balbach v. Moe, 294 Minn. 312, 200 N. W. 2d 901 (1972), restated that the proceedings on appeal to the district court were to be de novo.

The exception referred to above occurred in In re Petition for Improvement of County Ditch No. 13, 289 Minn. 108, 182 N. W.

2d 715 (1971). There, in affirming the lower court's order sustaining the dismissal of a ditch proceeding by the county board, we indicated that the scope of review of the trial court was quite limited. We relied on language appearing in In re Petition of Black, 283 Minn. 86, 88, 167 N. W. 2d 147, 149 (1969), regarding scope of review. A careful examination of the language in Black shows that it was directed toward the scope of review of this court and not toward the scope of review of the district court when considering appeals from the actions of a county board. Consequently, to the extent that In re Petition for Improvement of County Ditch No. 13, *supra,* is inconsistent with our holding in In re Petition for County Ditch No. 53, *supra,* which we reaffirm here, it is overruled. Therefore, the order of the trial court, if sustained by the evidence, was proper. It did not directly find the order of the county board was arbitrary, unlawful, or not supported by the evidence in accordance with the language of the statute, but the effect of its order is that the action of the county board was not supported by the evidence.

2. The trial court based its order of dismissal on the grounds that the interests of the public in preserving the conservation area exceeded the public benefit and utility of the ditch and that the purposes of the Federal crop-stabilization program and the state drainage program were irreconcilable.

In addition, the court in its findings alluded to the possible effect the ditch might have on flooding along the lower course of the Minnesota River. However, it appears that the court properly gave little weight to this last factor, since there was not sufficient evidence to support a conclusion that the 4 miles of County Ditch No. 93 would have a material effect on flood conditions in the river.

With regard to the conservation issue, we hold that the trial court abused its discretion in relying on this as a basis for dismissing the proceedings. We are cognizant of the growing problems of conservation. However, our legislature has provided a procedure for retaining conservation areas. Minn. St. 97.481 pro-

vides for the purchase by the state of marshes and wetlands, and also provides:

"* * * The commissioner in the purchase of such wetlands must recognize that when a majority of land owners, or owners of a majority of the land in the watershed, petition for a drainage outlet, that the state should not interfere, or unnecessarily delay such drainage proceedings when such proceedings are conducted according to the Minnesota Drainage Code."

Our legislature has thus recognized the need of balancing the public interest in conservation and the private interest in use of property. However, the statute provides for payment to the owners if the public interest in conservation is to prevail. The effect of the lower court's ruling here is to allow the public interest in conservation to prevail over the private interests of the landowners without compensation as required by statute. If the state desires to maintain the area in question as a conservation area, it should proceed under the provisions of § 97.481. If not, such considerations cannot interfere with drainage proceedings and cannot be a basis for dismissing a drainage proceeding ordered by the county board.

3. Likewise, we cannot sustain the order of dismissal because of the irreconcilable purposes of the Federal crop-stabilization program and the state drainage program. The fact that they may be irreconcilable is of little comfort to the owners of land who must pay real estate taxes on the land but cannot enjoy it to its full potential. Our statutes and decisions have not allowed this as a basis for dismissing a drainage proceeding, and we decline to extend our holdings in prior decisions to include such a consideration.

4. Having disposed of the grounds upon which the trial court based its decision, we reverse its judgment of dismissal. However, since the trial court found that the evidence was insufficient to determine the issue of public health, we remand for further proceedings because our statute authorizing establishment

of a drainage ditch requires that the order therefor include a finding that the proposed ditch will promote public health.[1] Also, at the time of such further proceedings as may be ordered by the trial court, any corrective action required of the engineer or viewers may be considered.

Reversed and remanded.