**Gerald Harry MADISON, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C4–98–120.

Court of Appeals of Minnesota.

Oct. 20, 1998.

Review Denied Dec. 15, 1998.

James H. Leviton, Minneapolis, for appellant.

Hubert H. Humphrey III, Attorney General, Joel A. Watne, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by HUSPENI, P.J., and RANDALL and PETERSON, JJ.

## OPINION

RANDALL, Judge.

Appellant challenges the district court's refusal to reinstate his driver's license under Minn.Stat. § 171.19. We reverse and remand.

## FACTS

Since 1985, appellant Gerald Harry Madison has been treated for a diabetic condition. In December 1996, Madison was a licensed driver subject to a restriction that any use of alcohol would invalidate his license. On December 7, 1996, Madison suffered a diabetic reaction and passed out while driving. His vehicle left the roadway, jumped a curb, hit a light pole, and ended up in a snowbank.

The first witness on the scene was Alan Gauthier, a volunteer fire fighter and a trained first responder who had served as a Hennepin County special deputy sheriff. When Gauthier arrived, he found Madison confused and disoriented. Gauthier determined that Madison was a diabetic and that Madison had suffered a diabetic reaction. Gauthier asked Madison if he had had anything to drink, and Madison responded that he had drunk "a couple of beers." Gauthier noticed no odor of alcohol or other signs of alcohol consumption.

Mitchell Weinzetl, a sergeant with the Savage Police Department, arrived on the scene a few minutes after Gauthier. Weinzetl was told that Madison had admitted consuming alcohol. Weinzetl spoke with Madison and noticed an odor of what he thought was alcohol. When Weinzetl asked Madison if he had been drinking alcohol, Madison responded that he had "a couple of beers earlier in the day," but none for quite some time. Weinzetl noticed no other signs of alcohol consumption. Weinzetl issued Madison a citation for violating the total abstinence restriction on his driver's license.

James Nord, a paramedic, arrived in response to the emergency call. Nord examined Madison in the ambulance and found that he had just suffered a diabetic reaction. Nord did not smell an odor of alcohol on Madison or notice anything that indicated Madison had consumed alcoholic beverages. No one told Nord that Madison was intoxicated or that he said he had been drinking.

On March 25, 1997, Weinzetl wrote a letter to the Department of Public Safety indicating his observations of Madison on December 7, 1996. In the letter, Weinzetl stated that he responded to Madison's vehicle accident, that

Madison's license was subject to a total abstinence restriction, that Madison admitted to drinking alcohol, and that Weinzetl detected the odor of alcohol on Madison. The letter did not mention that the accident was caused by Madison's diabetic reaction.

The Commissioner of Public Safety canceled and denied Madison's license for violation of the total abstinence restriction. Madison petitioned the district court to have his license reinstated under Minn.Stat. § 171.19 (1996). At trial, Madison testified that he had not had any alcohol, and that he had only consumed root beer on the day of the accident. Madison's nephew, who had been with Madison for several hours before the accident, testified that Madison drank root beer with his lunch and again later in the day. He also testified that Madison did not drink any alcoholic beverages during the time they were together.

Madison's physician, Dr. Thomas Cathey, testified that a person who had just suffered a diabetic reaction might be able to accurately provide simple information, such as name and address, but unable to correctly respond to other questions. Cathey testified that a person who had just suffered a diabetic reaction might confuse "root beer" and "beer." The district court made no findings regarding Cathey's testimony. The district court did not make a specific finding that Madison had been drinking alcohol. The district court concluded that Weinzetl's letter to the Commissioner of Public Safety gave the commissioner sufficient cause to revoke Madison's license. The district court also determined that cancellation of Madison's license was not "arbitrary or unreasonable." Madison moved to vacate the district court's decision and moved for a new trial or for amended findings. The district court denied these motions.

## ISSUE

Did the district court apply the proper standard of review in this appeal for license reinstatement under Minn.Stat. § 171.19 (1996)?

## ANALYSIS

Madison argues that the district court misapplied the law by refusing to consider the evidence presented at the reinstatement hearing and by instead basing its decision not to reinstate his driver's license solely on Weinzetl's March 25, 1997, letter to the commissioner. Madison's argument raises questions about the role of the district court in a license reinstatement proceeding under Minn.Stat. § 171.19 (1996). We begin our analysis by examining the role of the district court in a proceeding under section 171.19.

A driver whose license has been canceled and denied may petition the district court for reinstatement. Pursuant to Minn.Stat. § 171.19:

> Any person whose driver's license has been refused, revoked, suspended, or canceled by the commissioner * * * may file a petition for a hearing in the matter in the district court * * *, and such court is hereby vested with jurisdiction, and it shall be its duty, to set the matter for hearing upon 15 days' written notice to the commissioner, and thereupon *to take testimony and examine into the facts of the case to determine whether the petitioner is entitled to a license* or is subject to revocation, suspension, cancellation, or refusal of license, and shall render judgment accordingly.

(Emphasis added.)

There has been some confusion regarding the district court's standard of review in proceedings under section 171.19. *See, e.g., State, Comm'r of Pub. Safety v. Hanson*, 356 N.W.2d 689, 693 (Minn.1984) (providing in dicta when commissioner abuses discretion in refusing to reinstate license, district court has authority to order reinstatement); *Willems v. Commissioner of Pub. Safety*, 333 N.W.2d 619, 621 (Minn.1983) (reversing district court's de novo review of reinstatement petition after license revocation under Minn. Stat. § 169.123 because of statutory amendment, but implying that de novo review proper for petitions under section 171.19); *McIntee v. State, Dep't of Pub. Safety*, 279 N.W.2d 817, 821 (Minn.1979) (holding driver is "entitled to challenge the revocation of his license under § 171.19 and may challenge the merits

as well as the procedure of revocation"), *superceded in part on other grounds by* 1982 amendment to section 171.19; *Thorson v. Commissioner of Pub. Safety,* 519 N.W.2d 490, 493 (Minn.App.1994) (stating district court is not bound by record reviewed by commissioner, but should not reverse unless commissioner's decision is unsupported by substantial evidence or is arbitrary and capricious); *Gardner v. Commissioner of Pub. Safety,* 423 N.W.2d 110, 113 (Minn.App.1988) (providing district court reviews whether commissioner's decision was arbitrary or unreasonable "taking into account the facts which it finds upon the basis of the evidence and sworn testimony").

 The above characterizations of a district court's role could lead a reader to the conclusion that the district court's standard of review is unclear. It should not be. Minn.Stat. § 171.19 *is specific.* It states in relevant part that if a driver files a timely petition for a hearing, the district court is mandated to take testimony and examine into the facts of the case to determine whether the petitioner is entitled to a license or is subject to revocation/cancellation, etc. The statute is not ambiguous or unclear. It directs the trial court to listen to the testimony and determine whether the driver is entitled to a license, or should be subject to revocation, suspension, cancellation, or refusal of license.

The dissent points to language in *Amdahl v. County of Fillmore,* 258 N.W.2d 869, 874 (Minn.1977) indicating that as to county board officers, other than the sheriff, a district court's review of the county board's decision is "as though * * * by certiorari" even though new or additional testimony is taken. An examination of the facts in *Amdahl* shows why it has no application here. In *Amdahl,* the supreme court stated:

> Certiorari is, by its nature, a review based *solely upon the record.* Review by certiorari allows the district court to review the record before it, but only to ascertain whether that record furnishes a reasonable or substantial basis for the decision.

*Id.* (emphasis added).

That, of course, is the role of a district court reviewing an agency decision where there is a record. Here, there is no record. The Commissioner of Public Safety received a single unsolicited letter from a law enforcement officer and without notice to Madison (as the statute does not require the Commissioner of Public Safety to give the driver any notice or any right to present his evidence), sent him a notice of cancellation and denial. *See* Minn. R. 7503.1300, subpt. 3 (1997) (stating commissioner shall cancel and deny driver's license when commissioner has sufficient cause to believe person consumed alcohol after rehabilitation); Minn. R. 7503.0100, subpt. 11(A) (1997) (defining "sufficient cause to believe," which must be based on at least one of several sources including "written information from an identified person").

Contrast that with the record in *Amdahl.* As in all county board decisions of this nature, the requests of all the county officers, and those of the sheriff, for a salary review were on the table. The county board "took testimony," in effect, by examining the present salaries, taking into account the wage rate of other officials, previous increases since prior elections, and salaries paid officers holding similar positions in the other counties in Minnesota. *Id.* at 872. The record also shows the commissioners took account of the fact that the county was close to its maximum levy limits. *Id.* After full and fair discussion of all the tangibles and intangibles known to the county board at the time, they voted by majority vote to give the county recorder, the county auditor, and the county treasurer modest raises. *Id.* Each officer appealed to the district court claiming his raise should have been even more. *Id.*

 The *Amdahl* court made the statements (on which the dissent bases its argument) in discussing the scope of review for the district court in reviewing the county board's actions as to the auditor, the treasurer, and the recorder. But in this case, there was nothing from the commissioner's office for the district court to "review by cert" except the one above-mentioned solitary letter. One unsolicited letter is not an agency "record" entitled to deference or a rebuttable presumption of correctness by a district court that hears the entire case for both

sides in a courtroom setting, under oath and on the record. Weinzetl's initial letter here is evidence, but just one part of all the evidence.

If the county board in *Amdahl* had no discussion about salary setting, did not have it on their agenda, gave no public notice, and did not advise the county officers that the subject of their salary would be heard at the meeting, but rather, by unrecorded confidential vote, merely pinned a slip of paper on the county board message wall that the salaries for the coming year for county auditor, county recorder, and county treasurer were "x amount," and left it at that, the *Amdahl* decision would likely have a different analysis and would have pointed out that upon appeal to the district court, the district court's hearing would be de novo because it would have to be de novo, as there was no record to review. *Amdahl* is supportive of this decision today because it states that certiorari is a review based upon a record. If there is no record, there can be no certiorari.

Common sense dictates that when the statute calls for a district court to consider new evidence, meaning evidence that the commissioner of public safety did not have in front of it when it made its initial decision to cancel, the trial is de novo. For the district court to be required to give deference to the commissioner's cancellation, the entire statute would have to be rewritten. The statute would have to mandate that once the commissioner makes its preliminary decision to revoke or cancel someone's license under Minn.Stat. § 171.19, the commissioner would then have to give formal notice to the driver and give the driver a reasonable amount of time to present all of his evidence, whether written or oral, to the commissioner's office. Then, after the record closed, and the commissioner made its decision, if the statute called for the driver to appeal that ruling to the district court, then, of course, the district court would be in a position to review the commissioner's findings and legal conclusions by certiorari and give the commissioner's office the normal deference that is given to state agencies. Put another way, in that scenario, the district court would review the commissioner's record to determine whether the commissioner's decision was arbitrary or capricious. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 827 (Minn.1977) (holding review of agency decisions by district court and appellate court limited to whether findings supported by substantial evidence and whether conclusions arbitrary or capricious).

■ But that is not our Minnesota statute, outlined above, or anything close to it. Rather, the statute mandates that the district court give the driver a new hearing based on new evidence once the driver has challenged the commissioner's action. Because section 171.19 directs that the district court may take new evidence, the duty of the district court cannot be to simply review the commissioner's determination based on the partial, even skimpy, evidence considered by the commissioner. If the district court's standard of review were limited to determining whether the commissioner acted in an arbitrary or capricious manner, the district court would be engaging in useless activity by taking new evidence. *See* Minn.Stat. § 645.17(1) (1996) (legislature does not intend absurd result).

It would be contradictory to confine a district court that has considered new evidence to just a review of a commissioner's determination, which determination was made informally without the benefit of the evidence.

This case today is representative of the amount of new evidence a driver can bring forth at the hearing, compared to the limited evidence upon which the commissioner's office acts. Here, the commissioner's office was limited to a letter from Sergeant Weinzetl. The letter was not given under oath, and the contents of the letter were not subject to cross-examination. In fact, the contents of the letter were not even subject to friendly direct or redirect examination by a prosecutor to bring forth the full import of that evidence. On the other hand, at the district court hearing mandated by the statute, the district court had the limited evidence the commissioner had, *plus* the testimony under oath of persons on the scene, including Madison, Weinzetl [1], Nord, Gauthi-

---

1. We also note that Weinzetl testified that, using a code number 8, he indicated in his police

er, and the testimony of Madison's physician Dr. Cathey and Madison's nephew.

Thus from the record, we know the commissioner's original decision to cancel was based on less than 20%, perhaps less than 10%, of the evidence, and that limited amount was unsworn and not subject to cross-examination.

Minnesota courts have previously determined that a district court must provide a trial de novo for similar appeals from administrative agencies. For appeals from orders dismissing or establishing drainage systems, the statute does not specifically provide for a de novo hearing, but because new evidence may be introduced, courts have interpreted the statute to require a de novo hearing:

> The [drainage] statute provides that the court shall examine the whole matter and receive evidence to determine whether the findings made by the county board can be sustained, and, if it finds that the order appealed from is not supported by the evidence, it shall make such order to take the place of the order appealed from as is justified by the record before it. It would seem that the language of the statute can only mean that, when the appellants in a case such as this proceed with the introduction of evidence, the trial is for all intents and purposes *de novo* as it was under the old statute and that the court thereupon can make such findings governing the whole case as may be necessary.

*Schultz v. Chippewa County,* 238 Minn. 392, 402–03, 57 N.W.2d 158, 164 (1953) (discussing Minn.Stat. § 106.631, subd. 4 (current version at Minn.Stat. § 103E.095 (1996))); *see also Schwermann v. Reinhart,* 296 Minn. 340, 344–45, 210 N.W.2d 33, 36 (1973) (reaffirming *Schultz* ).

■ Here the district court, sitting pursuant to Minn.Stat. § 171.19, acts as a court of first impression when it considers new evidence at the hearing. We conclude that since the Commissioner of Public Safety is not required to make any kind of a formal record when it exercises its power to cancel and deny, the district court conducts a trial de novo and independently determines whether a driver is entitled to license reinstatement under Minn.Stat. § 171.19 when the driver petitions pursuant to the statute.

Our decision does not affect the driver's burden of proving entitlement to license reinstatement under Minn.Stat. § 171.19. *See McIntee,* 279 N.W.2d at 821 (burden of proof of error on petitioner in section 171.19 proceedings); *cf. Schultz,* 238 Minn. at 402, 57 N.W.2d at 164 ("effect of a trial *de novo* on appeal from the order of the commissioner of taxation which was prima facie valid simply placed the burden of introducing evidence to overcome the prima facie status of the order on the taxpayer").

■ Having clarified that a district court taking new evidence under Minn.Stat. § 171.19 conducts a trial de novo, our review now shifts to the district court's findings and legal conclusion in this case.

Here, the district court's decision was based solely on a belief that since Weinzetl's letter gave the commissioner "sufficient cause," Madison's cancellation can be upheld on that basis. The district court's findings state in relevant part:

13. The Department of Public Safety canceled the petitioner's driver's license because of the information provided by Sergeant Weinzetl in his letter of March 25, 1997.

14. The information in the letter of March 25, 1997, provided the Commissioner of Public Safety with sufficient cause to believe that the petitioner had consumed alcohol after his documented date of abstinence.

Although the district court made some other findings, it basically repeated a summary of the testimony of each witness without coming to any conclusion as to whether that testimony was credible and did not come to any conclusion as to whether a witness's testimony or other evidence affected the court's decision to uphold the commissioner.

report that Madison "had been drinking." After trial, Madison's counsel learned that the code number 8 means that a driver was "ill." Number 3 indicates that a person "had been drinking."

Most importantly, the district court did not make an independent finding that Madison consumed alcohol or that Madison had not consumed alcohol. Without that specific finding, and the reasons for it, we cannot give meaningful appellate review to the decision denying Madison's petition for reinstatement.

It is not enough for the district court to conclude that the Commissioner of Public Safety had "sufficient cause." On the limited evidence before the commissioner, meaning just Weinzetl's letter, of course (if that was the entire record), the commissioner had "sufficient cause." In Weinzetl's letter to the commissioner he stated that (a) Madison was in a car accident; (b) Madison's license was subject to a total abstinence restriction; (c) he detected the odor of alcohol on Madison; and (d) Madison "admitted" to him that he had been drinking. Because Weinzetl left out a significant and essential piece of evidence, meaning the fact that Madison's disorientation and accident had been caused by a diabetic reaction,[2] there was nothing for the commissioner to do upon receipt of Weinzetl's letter but cancel Madison's license. If Madison had not challenged that cancellation, it would stand. But by properly challenging the cancellation pursuant to Minn.Stat. § 171.19, Madison availed himself of the right given to him by the statute, meaning, a whole new hearing in district court in front of a judge where new evidence would be submitted, and cross-examination would be available to both sides.[3] Cross-examination is essential to the concept of due process. Weinzetl's initial letter to the Commissioner of Public Safety was totally ex parte. Madison did not even know that the letter had been written, much less given a chance to respond to Weinzetl's allegations.

This reversal and remand to the district court to make specific findings of fact based on the testimony under oath and to come to a legal conclusion as to whether Madison is entitled to reinstatement is not meant to indicate an opinion on the merits of the case either way. But the remand directs the district court to make the normal credibility determinations on the strength of the evidence that trial courts always make in bench trials. Then, if the district court cannot make a specific finding that Madison consumed alcohol on that day, Madison is entitled, as a matter of law, to reinstatement of his license. The determination as to the consumption of alcohol, or the lack thereof, has to be the independent conclusion of the district court because Madison properly availed himself of the due process protection of Minn. State. § 171.19. That protection is the right to a trial where he can present new evidence.

### DECISION

An appeal to the district court for license reinstatement pursuant to Minn.Stat. § 171.19 must be tried de novo. The statute gives the driver the right to present, for the first time, new evidence under oath. Because it is unclear from the district court's findings whether the district court conducted a trial de novo or merely found that the Commissioner of Public Safety had "sufficient cause," we reverse and remand for new proceedings consistent with this opinion.

**Reversed and remanded.**

---

**2.** The medical community and trained law enforcement personnel have known for years that people suffering from a diabetic reaction may have symptoms similar to those of an intoxicated person, including disorientation, slurring of speech, unsteady walk, and unresponsiveness to questions. This phenomenon is such common knowledge that we take judicial notice of it. Did Madison, in his diabetic reaction condition, fully understand Weinzetl's question about whether he had been drinking? Did Madison assume he was mumbling the answer "root beer" when the answer came out as "a couple of beers?" Did Madison answer "root beer" but Weinzetl misunderstood him and thought he said "a couple of beers?" These are, among others, undetermined factual issues.

**3.** We note that Minn.Stat. § 171.19 states in relevant part:

The commissioner may appear in person, or by agents or representatives, and may present evidence upon the hearing by affidavit personally, by agents, or by representatives. The petitioner may present evidence by affidavit, except that the petitioner must be present in person at such hearing for the purpose of cross-examination.

PETERSON, Judge (dissenting).

I respectfully dissent. Although I agree with the majority that there has been some confusion regarding the district court's standard of review in proceedings under Minn. Stat. § 171.19 (1996), this court has long held that in a driver's license reinstatement case, the district court must employ the "arbitrary and capricious" standard when reviewing the decision of the Commissioner of Public Safety. *Mechtel v. Commissioner of Pub. Safety,* 373 N.W.2d 832, 834 (Minn.App.1985).

> Although the Commissioner's decision is subject to review, the district court does not have de novo review. The fact that the trial court would have decided the case differently, does not mean the trial court can substitute its judgment for that of the Commissioner.

*Schultz v. Commissioner of Pub. Safety,* 365 N.W.2d 304, 307 (Minn.App.1985)

This narrow standard of judicial review applies in a license reinstatement proceeding under Minn.Stat. § 171.19 because the proceeding is part of a statutory administrative licensing system. In this system, the legislature has given the Commissioner of Public Safety the authority to

> cancel the driver's license of any person who, at the time of the cancellation, would not have been entitled to receive a license under the provisions of section 171.04.

Minn.Stat. § 171.14 (1996).

Under Minn.Stat. § 171.04, subd. 1(9) (1996), a person is not entitled to receive a license

> when the commissioner has good cause to believe that the operation of a motor vehicle on the highways by such person would be inimical to public safety or welfare.

Under this statute, a driver's license may be cancelled without proving beyond a reasonable doubt or even by a preponderance of the evidence, that operation of a motor vehicle by the driver would be inimical to public safety or welfare. All that is required is that the commissioner have good cause to believe that operation of a motor vehicle on the highways by the driver would be inimical to public safety. *See Plaster v. Commissioner of Pub. Safety,* 490 N.W.2d 904, 906 (Minn.App.1992)

(commissioner must present evidence showing good cause to believe driver violated total abstinence requirement); *see also* Minn. R. 7503.1300, subpt. 3 (1995) (commissioner shall cancel driver's license of person whose license has been reinstated after completing rehabilitation when commissioner has sufficient cause to believe person consumed alcohol since documented date of abstinence).

There is a presumption of regularity and correctness when courts review license matters. *Thorson v. Commissioner of Pub. Safety,* 519 N.W.2d 490, 493 (Minn.App.1994). This presumption, together with a narrow standard of judicial review, ensures that courts do not exercise the licensing authority given by the legislature to the Commissioner of Public Safety. And the limited judicial review available to drivers ensures that the commissioner's licensing authority is not exercised in a fraudulent, arbitrary, or unreasonable manner.

*Amdahl v. County of Fillmore,* 258 N.W.2d 869 (Minn.1977), explains what the district court is to do in a proceeding where it reviews an administrative decision but may consider evidence that was not part of the record before the administrative decision maker. In *Amdahl,* the Fillmore County Board of Commissioners voted to raise the salaries of the county sheriff, auditor, treasurer, and recorder. *Id.* at 872. These county officers then instituted statutory appeals to the district court on the grounds that the raises approved by the county board were arbitrary, capricious, unreasonable, and made without sufficient regard to the officers' duties and responsibilities. *Id.*

The statute that permitted an appeal to the district court from the county board's decision setting the sheriff's salary provided for de novo review. *Id.* at 873. The statutes that permitted appeals to the district court from the county board decisions setting the salaries of the other officers provided that "the court shall review the decision or resolution of the board * * * as though reviewed by certiorari, except new or additional evidence may be taken." Minn.Stat. §§ 384.151, subd. 7; 385.373, subd. 7; 386.015, subd. 7 (1974).

The district court ordered the county to increase the county officer's salaries in specified amounts, and the county appealed all four cases. *Id.* at 872. The supreme court affirmed the district court decision with respect to the sheriff's salary but reversed as to the other officers. *Id.* at 875–76.

The supreme court explained that fixing rates of compensation for county officers "is essentially a legislative or an administrative act, not a judicial one." *Id.* at 873. Therefore, judicial review was limited to determining "whether the salary was set in an arbitrary or unreasonable fashion." *Id.* With regard to the officers other than the sheriff, the supreme court explained that

> Certiorari is, by its nature, a review based solely on the record. Review by certiorari allows the district court to review the record before it, but only to ascertain whether that record furnishes a reasonable or substantial basis for the decision. The fact that these statutes allow the district court to take new or additional testimony does not conflict with this limited scope of review * * * [W]e discern it to be the intention of the legislature, in allowing the district court to take new or additional testimony, to provide an opportunity for aggrieved county officers to show factors dehors the record which they believe affected the board's decision, revealing as arbitrary or capricious the board's action which might otherwise appear reasonable.

*Id.* at 874.

The supreme court concluded that:

> Under the statutes governing the [auditor's, treasurer's and recorder's] appeals, it is not the function of the district court in the first instance, or this court on subsequent appeal, to substitute its discretion for that of the county board. Our examination of the record is limited to an inquiry as to whether the county board has acted unreasonably or arbitrarily. While we may reach a conclusion different from the county board based upon the evidence considered, we cannot substitute our judgment for that of the county board absent a determination of arbitrariness or failure to

sufficiently consider the duties and responsibilities of the office in question.

*Id.* at 876.

While I recognize that Minn.Stat. § 171.19 does not direct the district court to review the commissioner's decision as though reviewed by certiorari, I find persuasive the supreme court's conclusion in *Amdahl* that the fact that the statutes allowed the district court to take new or additional evidence did not change the district court's standard of review. Minn.Stat. § 171.19 does not explicitly provide for de novo review. The majority's conclusion that common sense dictates that when the statute calls for the district court to consider new evidence, the trial is de novo by definition, is contrary to *Amdahl* and more significantly, is inconsistent with this court's statements that the district court does not have de novo review.

Canceling Madison's driver's license when there was evidence that he had consumed alcohol since his documented date of abstinence was an administrative act. Here, as in *Amdahl*, the fact that Minn.Stat. § 171.19 allows the district court to take new evidence does not change the fact that the district court employs an arbitrary and capricious standard in its review of the commissioner's administrative act. Even if the district court believes that the commissioner's decision is incorrect, it may reverse the decision only if it determines that the decision is fraudulent, arbitrary, unreasonable, or outside the commissioner's jurisdiction. *See Schultz*, 365 N.W.2d at 306 (reviewing court in driver's license reinstatement case cannot reverse agency decision unless decision is fraudulent, arbitrary, unreasonable, or outside its jurisdiction). The evidence presented for the first time in the district court may be used by the court to determine whether the commissioner's decision is fraudulent, arbitrary, unreasonable, or outside the commissioner's jurisdiction. It may not be used as a basis for the district court to substitute its judgment for the judgment of the commissioner.

I also find persuasive the supreme court's conclusion in *Amdahl* that it is not the function of this court, on a subsequent appeal of the commissioner's decision, to substitute its judgment for the judgment of the commis-

sioner. As in the district court, our review is limited to an inquiry as to whether the commissioner's decision is fraudulent, arbitrary, unreasonable, or outside the commissioner's jurisdiction. But the record before this court includes the record of the district court proceedings.

> Where the trial court reviewing an agency decision makes independent factual determinations and otherwise acts as a court of first impression, this court applies the "clearly erroneous" standard of review. Where, on the other hand, the trial court is itself acting as an appellate tribunal with respect to the agency decision, this court will independently review the agency's record.

*In re Hutchinson,* 440 N.W.2d 171, 175 (Minn.App.1989) (citations omitted), *review denied* (Minn. Aug. 9, 1989).

In a license reinstatement proceeding, the district court acts as an appellate tribunal with respect to the agency decision. But in performing its role as an appellate tribunal, the district court may take evidence and make factual determinations regarding whether the agency decision is fraudulent, arbitrary, unreasonable, or outside the commissioner's jurisdiction. Because the district court's review is not limited to a review of the agency's record, this court's review cannot be limited to an independent review of the agency's record. Accordingly, this court reviews the record of the proceedings in the district court and applies the "clearly erroneous" standard of review to the independent factual determinations of the district court. This court conducts a de novo review of legal issues and "is not bound by the legal conclusions of the trial court or of the agency itself." *Id.*

Madison argues that the evidence presented at the reinstatement hearing, considered in its entirety, proved facts that made the commissioner's decision arbitrary or unreasonable. Madison concedes that Weinzetl's March 25, 1997, letter, when viewed in isolation, provided the commissioner with sufficient cause to believe that he had consumed alcohol but contends that the district court refused to consider the contrary evidence presented at the reinstatement hearing and instead based its decision on Weinzetl's letter. I see no basis for concluding that the district court refused to consider any of the evidence presented at the reinstatement hearing.

The commissioner's decision to cancel Madison's license was based on Weinzetl's letter, which stated that Madison admitted he had consumed two beers and that Weinzetl detected the slight odor of an alcoholic beverage coming from Madison. At the reinstatement hearing, Madison presented evidence that he did not consume alcohol on December 7, 1996. This evidence contradicted Weinzetl's observations, but it did not demonstrate that the commissioner's decision was arbitrary or unreasonable.

> A decision will be deemed arbitrary and capricious if the agency relied on factors which the legislature had not intended it to consider, if it entirely failed to consider an important aspect of the problem, if it offered an explanation for the decision that runs counter to the evidence, or if the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Trout Unlimited, Inc. v. Minnesota Dep't of Agric.,* 528 N.W.2d 903, 907 (Minn.App.1995).

Under Minn.Stat. §§ 171.04, subd. 1(9), 171.14 and Minn. R. 7503.1300, subpt. 3, the commissioner had to decide whether to cancel Madison's driver's license because there was good cause or sufficient cause to believe that Madison consumed alcohol since his documented date of abstinence. There is no reason to conclude that the legislature did not intend that the commissioner could consider and rely on a letter from a police officer when determining whether there was good cause to believe that Madison consumed alcohol. Weinzetl's letter described his basis for believing that Madison consumed alcohol. While it is possible that Weinzetl's perceptions were incorrect or that he did not accurately report his perceptions to the commissioner, the evidence presented at the reinstatement hearing did not demonstrate that there was any reason for the commissioner to doubt the accuracy of Weinzetl's statements.

Madison contends that the commissioner had reason to question the accuracy of Weinzetl's letter because the letter was written three months after the accident occurred and was inconsistent with the accident report that Weinzetl completed at the time of the accident. Though it may have been a poor practice for Weinzetl to delay notifying the commissioner, the delay alone does not call into question the accuracy of the letter. And the letter was not inconsistent with the accident report.

Madison argues that the letter was inconsistent with the report because nothing in the report in any way remotely suggested that Weinzetl observed, heard, or smelled anything that reasonably indicated Madison had consumed alcohol. But there was no reason for Weinzetl to indicate in the accident report that Madison had consumed alcohol. There has never been any dispute that the cause of the accident was a diabetic reaction. Madison did not appear to be intoxicated and there was no reason for Weinzetl to believe that alcohol consumption caused the accident. In the accident report, Weinzetl indicated that the primary factor contributing to the accident was "physical impairment." He also indicated that the apparent physical condition of the driver was that he was "ill." These observations are not inconsistent with alcohol consumption.

The commissioner's decision does not run counter to the evidence presented to the commissioner and the decision is not implausible. The district court's factual determination that the commissioner's cancellation of Madison's license was not arbitrary and capricious was not clearly erroneous. I would affirm.