Gary L. CONSTANS, petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No. A12–2307.

Court of Appeals of Minnesota.

Aug. 19, 2013.

Daniel B. Honsey, Elizabeth M. Randa, Kraft Walser Law Office, PLLP, Hutchinson, MN, for appellant.

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by SMITH, Presiding Judge; CHUTICH, Judge; and TOUSSAINT, Judge.*

## OPINION

CHUTICH, Judge.

This appeal arises out of the department of public safety's cancellation and denial of the driver's license of appellant Gary Constans under Minnesota Statutes sections 171.14(a)(4), and 171.04, subdivision 1(10). After respondent commissioner of public safety (commissioner) found Constans's driving conduct to be inimical to public safety and canceled his license, Constans petitioned the district court for reinstatement. The district court denied the petition, ruling that the commissioner's decision to cancel was within her jurisdiction and was not arbitrary or capricious. Because we agree that Constans did not meet his burden of showing that he is entitled to reinstatement of his driver's license, we affirm the district court's decision.

## FACTS

Constans is an adult male in his late 50's. At 11:42 p.m. on June 10, 2008, Constans was driving home to Lester Prairie when he was stopped by a Carver County sheriff's deputy on Highway 5 in Victoria for swerving over the center line and crossing the fog line. The officer's record noted that Constans had been stopped four times in the last year for the same driving conduct. As a result of the June stop, the officer asked the department of public safety (department), driver and vehicle services division, to conduct a driver evaluation A–5 interview with Constans. During the interview with a driver-improvement specialist, Constans denied

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

that he was crossing the center and fog line. He also denied that he had four previous encounters with the police for "erratic driving." The driver-improvement specialist noted that Constans had "very good knowledge" of traffic signs and laws and no further action against Constans was taken.

About 12:30 a.m. on May 8, 2011, a Lester Prairie police officer received a call from McLeod County that a Ford pickup truck was seen headed west on Highway 7 just west of Waconia and was "all over the road," going over the center and fog lines, and traveling at "a very slow speed" in a 55 mile-per-hour zone. The officer saw a pickup matching the description, pulled it over, and identified the driver as Constans. Constans was driving home from his work as a disc jockey. The officer described to Constans why his driving conduct was concerning. Constans denied crossing the center line and explained that he did not travel faster than 48 miles per hour because his truck has high mileage.

The officer told Constans that he would follow him home and continue to observe his driving conduct. Constans then continued west on Highway 7 driving 30–45 miles per hour. The officer again pulled Constans over and explained that he could not drive that slowly because it was unsafe for other motorists and he could potentially cause an accident. The officer drove Constans the rest of the way home and noted that it "didn't seem like [Constans] understood" safe driving conduct.

As a result of the May 8, 2011 stop, Constans was required to participate in a second A–5 interview. The driver-improvement specialist noted that Constans claimed that he drives slowly to save gas and that he planned to continue doing so. The specialist specifically told Constans, and he acknowledged in writing, that if he continued to drive slowly and to impede

traffic, his license could be canceled as inimical to public safety. As a result of this second interview, Constans was required to take written and road driving tests, which he passed.

On July 19, 2012, a Carver County sheriff's deputy observed Constans driving eastbound on the shoulder of Highway 7 at County Road 11. Constans's hazard lights were not on, he appeared to be driving 40 miles per hour, and all four tires were completely over the fog line. The officer stopped Constans who then explained that he was driving on the shoulder and going slower than other traffic because he was trying to find "the sweet spot for gas mileage." The officer noted that Constans had nine previous contacts with law enforcement since 2007 for similar reasons, and advised Constans that it is illegal to drive on the shoulder. The officer was concerned that Constans appeared unable to understand why impeding traffic is dangerous and that he "truly did not comprehend why it was an issue" to drive under the speed limit. The officer notified the department after the stop because there was a notation on Constans's license to do so "for any and all driving issues."

Upon receiving this information, the department notified Constans that his driver's license was canceled as inimical to public safety, effective August 13, 2012. Just before the cancellation took effect, Constans met with Pamela Moe, a driver-improvement specialist at the department, to discuss the cancellation notice.

Moe explained that Constans's license was canceled because (1) her office received another request to examine him, (2) her office received another report that Constans had been impeding traffic by driving too slowly and with all four wheels over the fog line, and (3) Constans had signed a statement acknowledging that if vehicle services received another report,

his license would be canceled. Moe also explained to Constans why his driving conduct was dangerous and got the impression that he was not going to change his conduct. At the reinstatement hearing, Moe testified that Constans's license was canceled not because of her impressions, but because "[i]t was already set up that ... if we would get a report on him, it would get canceled."

After the cancellation, Constans petitioned the district court to reinstate his license. *See* Minn.Stat. § 171.19 (2012). He argued that he was entitled to reinstatement and his driving was not inimical to public safety because it did not threaten physical harm or involve driving under the influence of alcohol or drugs. A reinstatement hearing was held on October 25, 2012.

In addition to the testimony of the driver-improvement specialist, Moe, and the admission of the department and police files relating to Constans's driving history and two A–5 interviews, Constans testified at the hearing. He explained that he has not had any car accidents in 35–plus years, and that he had received only one traffic citation in the past five years, which was for impeding traffic. He explained that he had been required to participate in the A–5 interviews because of erratic driving, but denied driving erratically on any occasion. Constans also testified that he signed the statement acknowledging that his license would be cancelled upon his next offense because he thought that if he did not, he would not get his license back.

Constans also testified that he complies with traffic regulations when he is driving. He admitted that he might have crossed the fog line, but he did not think he was breaking any traffic laws because he was going above the minimum speed limit at all times and because crossing the fog line is discouraged, but not prohibited. Constans also explained that he sets his cruise control at 48 miles per hour because that is his vehicle's "sweet spot" for gas mileage and because driving slowly keeps him from hitting "critters," or animals, in "critter zones." It is important for him to not hit any animals, Constans explained, because he only carries liability insurance on his truck. Constans also testified that he pulls over to the shoulder to let cars pass when he is driving slowly but that he drives the posted speed limit when he drives to visit his grandchildren, some of whom live out of state in California and North Dakota. Finally, Constans testified that he was willing to change his driving conduct by "get[ting] rid of the sweet spot" and driving the speed limit in the future.

The district court noted that Constans's driving conduct was concerning and that it violated Minnesota laws. Specifically, the district court cited Minnesota Statutes section 169.15, subdivision 1 (2012), which provides that "[n]o person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation," and section 169.18, subdivision 7(a) (2012), which requires drivers on highways with clearly marked lanes to drive entirely within a single lane. The district court explained its understanding that, despite Constans's driving history, the department was willing to consider reinstating his driver's license "just simply based on two things: No. 1, that [he] complete a driver's education class, which might be overkill, and, No. 2, that [he] modify [his] driving conduct and start driving 55 miles per hour on 55–mile-per–hour roadways."

The district court emphasized that, based on testimony and the history of at least nine prior police contacts stemming from his driving conduct, it understood why the commissioner said "enough is

enough." The district court told Constans that it was "concerned about five, six cars coming up behind you and people that are antsy to get moving, one of them goes by you when they shouldn't or when it isn't safe to do so." The district court found that it "cannot find that the commissioner's decision to cancel [Constans's] driving privileges is arbitrary, capricious, or unreasonable," and sustained the cancellation.[1] This appeal followed.

## ISSUE

I. Did the district court err when it denied Constans's petition to reinstate his license?

## ANALYSIS

 Constans challenges the license cancellation and the district court's denial of his petition to have his license reinstated. The decision whether to cancel a driver's license rests with the commissioner of public safety. Minn.Stat. § 171.25 (2012). A presumption of regularity and correctness applies when license matters are reviewed. *Thorson v. Comm'r of Pub. Safety,* 519 N.W.2d 490, 493 (Minn.App.1994). "An appellate court generally will not reverse an administrative agency's decision unless the decision was fraudulent, arbitrary, unreasonable, or outside the agency's jurisdiction and power." *Thompson v. Comm'r of Pub. Safety,* 567 N.W.2d 280, 281 (Minn.App.1997), *review denied* (Minn. Sept. 25, 1997).

 The petitioner seeking license reinstatement under section 171.19 has the burden of proving entitlement to reinstatement of the canceled license. *Pallas v.*

*Comm'r of Pub. Safety,* 781 N.W.2d 163, 166 (Minn.App.2010). In a license-reinstatement hearing, the district court conducts a de novo review of the department's decision to cancel and "must weigh witness credibility and all of the evidence, and independently determine whether the cancellation is justified." *Igo v. Comm'r of Pub. Safety,* 615 N.W.2d 358, 361 (Minn. App.2000), *review denied* (Minn. Oct. 17, 2000). We review de novo the district court's application of the law, *id.,* and defer to the district court's credibility determinations and ability to weigh the evidence, *Thorson,* 519 N.W.2d at 493. "The district court's fact findings will not be reversed on appeal unless clearly erroneous." *Thompson,* 567 N.W.2d at 281.

### *Not within the Commissioner's Jurisdiction or Powers*

Constans asserts that evidence of impaired driving is required before driving conduct can be found to be inimical to public safety, and, absent this conduct, the commissioner did not have jurisdiction to cancel and deny his license. In support of this assertion, Constans points to Minnesota Rule 7503.1300, subpart 2 (Supp.2012), which requires the commissioner to cancel a driver's license after the license holder incurs multiple alcohol-related incidents. Constans ignores, however, rule 7409.2800 (2011), which requires the commissioner to cancel the license of a driver who is not entitled to a license under Minnesota Statutes section 171.04. Section 171.04, subdivision 1(10), provides that persons not entitled to a driver's license include those

---

1. Before concluding the proceedings, the district court noted that "I don't like the idea that the cancellation is indefinite. I do think there needs to be some type of concrete plan in place so that Mr. Constans knows what he has to do in order to qualify" for license reinstatement. The commissioner claims that the department has set conditions for Constans since the hearing, and that Constans has not yet met them. No evidence of any reinstatement conditions exists in the record, but Constans does not appeal based on the absence of reinstatement conditions.

whose operation of a motor vehicle "the commissioner has good cause to believe" is "inimical to public safety or welfare."

The existence of a specific rule addressing cancellation for impaired driving does not negate the more general rule requiring cancellation when a driver is not otherwise entitled to a license. *See* Minn. Stat. § 14.02, subd. 4 (2012) (providing that agency rules do not supersede statutes and instead are "adopted to implement or make specific the law enforced or administered by that agency"). We hold, therefore, that the plain language of section 171.04, subdivision 1(10), provides the commissioner the discretion to determine driving conduct that is inimical to public safety, even when the driving does not involve impaired driving. As a result, the district court did not err when it concluded that it was within the department's jurisdiction to cancel Constans's license even though his driving conduct did not include impaired driving.

Constans relies on *State v. Busse,* 644 N.W.2d 79 (Minn.2002), for his assertion that "inimical to public safety" requires conduct involving impaired driving. We find this reliance misplaced. The *Busse* majority noted that "[u]nder the present state of the law, the *only* circumstances in which a person can have his license canceled as inimical to public safety involves repeated drug or alcohol abuse while driving." 644 N.W.2d at 86, n. 9. We do not agree, however, that this observation requires the conclusion Constans urges.

The *Busse* court was not presented with the same issue that we are faced with here, namely whether a driver's license can be canceled as inimical to public safety when the conduct at issue does not involve impaired driving. *Busse* involved an appellant who was challenging a conviction of driving after cancellation and whose license had been canceled for multiple instances of driving under the influence. *Id.* at 80. The issue in *Busse* was whether the state had jurisdiction to enforce the driving-after-cancellation charge against an enrolled tribal member whose charge was incurred while he was driving on his reservation, requiring the court to analyze whether the law was "civil/regulatory" or "criminal/prohibitory." *Id.* at 82. The court was *not,* as Constans asserts, delineating the types of driving conduct that may be deemed "inimical to public safety."

Moreover, the *Busse* court noted that "cancellation as inimical to public safety necessarily requires multiple driving under the influence convictions" only when discussing rule 7503.1300, which permits license cancellation in circumstances involving repeated instances of impaired driving. *Id.* at 84. Critically, the supreme court never discusses or mentions rule 7409.2800, which requires the commissioner to cancel the license of drivers whose driving conduct she has good cause to believe is inimical to public safety.

Indeed, the supreme court specifically stated that

we do not need to assume that any person whose license has been canceled as inimical to public safety poses a severe public safety risk because of drug or alcohol abuse.... Here, we are not presented with a situation in which it is even possible for a license to be canceled as inimical to public safety for some reason other than repeated driving under the influence convictions.... [W]e leave the door open to situations in which the reason underlying the cancellation presents different concerns than [the driving under the influence matter] before us in this case.

*Id.* at 86 n. 9.

*Arbitrary or Unreasonable*

Constans also contends that he is entitled to license reinstatement because noth-

ing in his driving record suggests that he poses a danger to the public. Constans points to no authority limiting the evidence that a commissioner or district court may consider when determining whether a driver's license was properly canceled as inimical to public safety. We decline to conclude that because Constans did not receive a ticket after each of his frequent encounters with police officers his driving conduct was not dangerous or otherwise inimical to public safety. Whether Constans's conduct was dangerous to the public is not determined by the number of citations reflected on his driving record.

■ The commissioner has discretion to find driving conduct inimical to public safety so long as there is "good cause" to so believe. Minn.Stat. § 171.04, subd. 1(10). Minnesota Rule 7409.0100, subpart 8a (2011), provides that, for rules relating to loss and reinstatement of driving privileges, "sufficient cause to believe" a person has engaged in impaired driving may be based on sources including, but not limited to, statements by the driver, police records, and facts within the personal knowledge of a department employee. At a reinstatement hearing in which a driver is arguing his license was improperly canceled, the commissioner may present evidence to the district court by affidavit or in person, as may the driver. Minn.Stat. § 171.19; *Madison v. Comm'r of Pub. Safety*, 585 N.W.2d 77, 82 (Minn.App.1998) (holding that, at a license-reinstatement hearing, the district court properly considered a letter upon which the commissioner relied in making the initial cancellation determination and other evidence presented at the hearing), *review denied* (Minn. Dec. 15, 1998).

The district court therefore did not err when it relied on notes from the A–5 interviews, testimony and other evidence presented at the reinstatement hearing, and police reports to conclude that Constans failed to show that he was entitled to reinstatement. *Cf. Trout Unlimited, Inc. v. Minn. Dep't of Agric.*, 528 N.W.2d 903, 907–08 (Minn.App.1995) (providing that an administrative action is arbitrary or capricious if the agency relied on factors that the legislature did not intend it to consider), *review denied* (Minn. Apr. 27, 1995).

■ Overall, given the particular facts here and the presumption of regularity and correctness afforded administrative actions, the district court properly concluded that the commissioner acted within her discretion and authority in finding Constans's driving conduct inimical to public safety and canceling his license. The district court found that Constans's driving conduct poses a problem. The district court specifically noted that Constans's slow driving impeded traffic and created dangerous situations for other drivers on the road, that Constans's driving conduct resulted in nine encounters with law enforcement officers and three A–5 interviews, and that Constans signed an agreement that he understood his license would be canceled if he continued to drive in the same manner.

Indeed, the record shows that Constans not only drives slowly, but that he believes that his own reasons for driving slowly outweigh any safety concerns he causes. Constans has repeatedly disregarded warnings from law enforcement officers that his driving creates dangerous driving conditions for everyone on these two-lane roads. Constans admits that he frequently impedes traffic—he testified that he pulls over onto the shoulder when he is driving slowly so that cars can pass. Impeding traffic is illegal because, among other reasons, it is unsafe. *See* Minn.Stat. § 169.15, subd. 1 (prohibiting driving "at such a slow speed as to impede ... the normal and reasonable movement of traffic except

when reduced speed is necessary for safe operation"). No evidence exists that Constans's traffic-impeding conduct is "necessary for safe operation" of his vehicle. *Id.*

Importantly, Constans acknowledged that the department would cancel his license if he was pulled over again for driving slowly and impeding traffic. Constans is capable of driving the speed limit; he testified that he does so when he drives to visit family in California, southern Minnesota, and North Dakota. Constans knows the rules of the road but he chooses to ignore them, despite increased risk to the public; accordingly, the district court properly concluded that he failed to meet his burden of showing that he is entitled to reinstatement of his license.

■■ Constans further contends the cancellation of his driver's license violated his right to procedural due process. He asserts that he could not contest the cancellation of his license because it was based on conduct not reflected in his driving record. Constans did not present any procedural-due-process argument to the district court and we therefore decline to reach the merits of his argument here. We generally do not address constitutional issues raised for the first time on appeal. *In re Welfare of C.L.L.,* 310 N.W.2d 555, 557 (Minn.1981). In addition, even if we considered the merits, the record shows that Constans had a meaningful opportunity before the district court to challenge the basis of the commissioner's decision to cancel his license.

## DECISION

Because driving conduct that is inimical to public safety is not limited to driving while impaired, and because the commissioner may evaluate evidence beyond a driving record to determine when public safety is threatened, the commissioner's decision to cancel Constans's driver's license was not arbitrary or unreasonable, was within her authority, and was justified and supported by the record. We agree with the district court's determination that Constans did not meet his burden of showing that he is entitled to reinstatement of his driver's license.

**Affirmed.**